# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 16, 2015

Plaintiff-Appellee,

v

No. 320067
Wayne Circuit Court
LC No. 13-006376-FH

MARSHON DEON STURNER,

Defendant-Appellant.

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

A jury convicted defendant of two counts of felonious assault, MCL 750.82, for which he was sentenced to three years' probation with the first six months to be served in jail. Defendant appeals as of right. Because the evidence was sufficient to support defendant's convictions, the trial court did not abuse its discretion by allowing a witness to testify to his personal observations, the prosecutor did not commit misconduct, and defendant was not denied the effective assistance of counsel, we affirm.

Defendant's convictions arise from a neighborhood street fight that began as a verbal argument between Sharonda Billingsley, defendant's girlfriend, and 16-year-old Rickia Matthews and her mother Sharnita Matthews. The Matthews family lived across the street from Billingsley. According to witnesses, the verbal argument escalated into a physical confrontation. Defendant then joined the confrontation and began attacking Rickia. Brothers Alveko and Kevin Durrah, who lived three houses down from the Matthews house, arrived in an apparent attempt to stop the fighting. During the ordeal, defendant obtained a steel pipe, which he then raised in an aggressive manner toward Alveko and Kevin Durrah while making threatening remarks. The defense theory at trial, as expressed by defense counsel in opening statement, was that defendant was attempting to break up the fight and he "was blamed for something he did not do." The sole defense witness, Doreen Jackson, testified that defendant never attacked anyone and that it was Billingsley, not defendant, who approached the Durrah brothers with the steel pipe. The jury convicted defendant of feloniously assaulting both Alveko and Kevin Durrah with the steel pipe. Defendant now appeals as of right.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues there was insufficient evidence to support his convictions for felonious assault. In particular, defendant argues that the evidence failed to show that he

-1-

possessed an intent to injure either Alveko or Kevin, or that he intended to place either Alveko or Kevin in a reasonable apprehension of an immediate battery.

We review a claim regarding the sufficiency of the evidence de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "In examining the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Reese,* 491 Mich 127, 139; 815 NW2d 85 (2012) (citation omitted). Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). It is for the trier of fact rather than this Court to determine what inferences can be fairly drawn from the evidence and to determine the weight to be accorded to the inferences. *People v Hardiman,* 466 Mich 417, 428; 646 NW2d 158 (2002); *People v Dunigan,* 299 Mich App 579, 582; 831 NW2d 243 (2013). This Court will not interfere with the fact-finder's role of determining the weight of evidence or the credibility of witnesses. *People v Wolfe,* 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

"The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Jackson*, 487 Mich 783, 787 n 2; 790 NW2d 340 (2010) (citation and emphasis omitted). "Felonious assault is a specific intent crime requiring either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery." *People v Rivera,* 120 Mich App 50, 54; 327 NW2d 386 (1982). Intent may be inferred from all the facts and circumstances. *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012). "Because it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required." *People v McGhee*, 268 Mich App 600, 623; 709 NW2d 595 (2005).

In this case, the evidence indicated that during, or in the moments after, the original altercation between Billingsley and Rickia, defendant obtained a steel pipe and approached each victim. Alveko testified that defendant held the steel pipe like a baseball bat. When Alveko stepped in front of defendant to prevent him from getting to the girls, defendant raised the pipe up as if to hit Alveko and stated, "I'm going to f**k you up." Defendant also told Alveko to get out of the way or defendant was going to hurt him. Alveko testified that he believed that defendant was going to hit him with the pipe. Similarly, Kevin testified that defendant approached him with the pole, raised and extended his hand backward, and stated, "I'll f**k you up old man." Kevin explained that his first reaction was to immediately "draw back" because he was scared and thought defendant was going to hit him. Viewing this evidence in a light most favorable to the prosecution, the manner in which defendant raised the pipe at each victim while simultaneously threatening to hurt them was sufficient to enable the jury to find beyond a reasonable doubt that defendant assaulted the Durrah brothers with the intent to place them in reasonable apprehension of an immediate battery.

In contrast, on appeal, defendant highlights the fact that he did not hit either victim and he characterizes his remarks as nothing but an "empty threat." Although defendant emphasizes that he did not actually hit anyone, it was not necessary for defendant to inflict injury or to commit a battery to be convicted of felonious assault. See *Jackson*, 487 Mich at 787 n 2.

-2-

Moreover, as noted, it was for the jury to determine what inferences to draw from the evidence, and we will not interfere with these determinations on appeal. *Hardiman,* 466 Mich at 428-431. Considering the manner in which defendant raised the pipe while simultaneously threatening each victim, a rational jury could reasonably find that defendant possessed an intent to place the victims in a reasonable apprehension of an immediate battery. Accordingly, the evidence was sufficient to establish the elements of felonious assault.

## II. OPINION TESTIMONY

Defendant next argues that the trial court erroneously allowed Alveko Durrah to express his opinion that defendant raised the steel pipe as if he intended to hit Alveko with it. In particular, defendant asserts that Alveko's testimony was not admissible under MRE 602 because Alveko did not have personal knowledge of defendant's state of mind. Alternatively, defendant also maintains that the trial court pierced the veil of judicial impartiality when it questioned Alveko to elicit his testimony that defendant raised the pipe as if he intended to hit Alveko with it.

"The decision whether to admit evidence is within the discretion of the trial court and will not be disturbed on appeal absent a clear abuse of discretion." *People v Aldrich,* 246 Mich App 101, 113; 631 NW2d 67 (2001). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

MRE 602 requires that a witness have personal knowledge of the matters to which he or she testifies. It states:

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. . . . [MRE 602.]

Also relevant to this case, MRE 701 allows a lay witness to offer testimony in the form of opinions or inferences that are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or a determination of a fact in issue."

In this case, defendant objects to the following exchange during Alveko's direct examination testimony:

> *Q.* Tell me exactly what you saw the defendant do with the pipe in front of you[.]
>
> *A.* Okay. I thought that's what I did. I stepped in front of him.
>
> *Q.* Okay.
>
> *A.* He raised the pipe up.
>
> *Q.* Yes.

*A*. As though he would hit me or step past me to hit someone else.

*[Defense Counsel]*: I'm going to object as to the - -

*The Court*: See you can't tell us what you think he was going to do. Just tell us what you saw him do. He raised up the pipe as to hit you, is that correct?

*A*. Yes.

Considering this exchange, we see nothing improper in Alveko's testimony. Contrary to defendant's framing of the issue, Alveko did not testify to defendant's subjective state of mind; instead, Alveko testified based on what he observed that defendant "raised the pipe up" "as though" to hit Alveko. Alveko was present during the altercation and he personally witnessed the events he described in his testimony. His testimony was sufficient to show that he had personal knowledge of the matters he was describing. MRE 602. Moreover, Alveko's testimony that defendant raised the pipe up "as though" to hit him was a form of lay opinion testimony, which was admissible because it was rationally based on Alveko's perception of the manner in which defendant raised the pipe and the testimony was helpful to a determination of a fact in issue (i.e., whether defendant intended to hit Alveko with the pipe or to place him in apprehension of an immediate battery). See MRE 701. Therefore, the trial court did not abuse its discretion in allowing the testimony.

On appeal, defendant also complains that the trial court pierced the veil of judicial impartiality when it questioned Alveko to elicit his testimony that defendant raised the pipe as if he intended to hit Alveko with it. Defendant argues that the trial court's questioning placed its seal of credibility on Alveko's testimony. Because defendant did not object on this ground at trial, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. See *People v Carines,* 460 Mich 750, 763-764; 597 NW2d 130 (1999); *People v Paquette,* 214 Mich App 336, 340-341; 543 NW2d 342 (1995).

A defendant is entitled to a neutral and detached magistrate during a criminal trial. *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). Pursuant to MRE 614(b), the trial court has the authority to interrogate witnesses at trial. Although a trial court is permitted to question witnesses in order to clarify testimony or elicit additional relevant information, "the court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial." *Cheeks*, 216 Mich App at 480. "The test is whether the judge's questions and comments may have unjustifiably aroused suspicion in the mind of the jury concerning a witness' credibility and whether partiality quite possibly could have influenced the jury to the detriment of the defendant's case." *Id.*

In this case, the trial court asked an isolated question that was intended to clarify Alveko's previous testimony and ensure that it was limited to, and rationally based on, what Alveko witnessed defendant do with the pipe. The trial court's question was not asked in an unfair or partial manner, and it did not suggest that the court believed that the testimony was credible. Thus, the trial court's question could not have influenced the jury to the detriment of defendant's case and there was no plain error. Furthermore, any perceived prejudice was cured when the trial court later instructed the jury that "my comments, my rulings, my questions, and

my instructions are not evidence" and that "[i]f you believe that I have an opinion about how you should decide this case you must pay no attention to that opinion." Jurors are presumed to follow their instructions, and this instruction was sufficient to protect defendant's substantial rights. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

## III. PROSECUTORIAL MISCONDUCT

Defendant next argues that he was denied a fair and impartial trial because the prosecutor mischaracterized Jackson's testimony during closing argument by suggesting that Billingsley "handed" the pipe to defendant, when in fact Jackson testified that defendant "grabbed" the pipe from Billingsley.

Defendant preserved this issue by objecting to this portion of the prosecutor's argument at trial. See *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). A preserved claim of prosecutorial misconduct is reviewed de novo. *Abraham,* 256 Mich App at 272. The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek,* 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *People v Mann,* 288 Mich App 114, 119; 792 NW2d 53 (2010). Generally, a prosecutor enjoys wide latitude regarding her arguments and conduct at trial. *Unger*, 278 Mich App at 236. A prosecutor may not make a statement of fact to the jury that is unsupported by the evidence, but she is free to argue the evidence and all reasonable inferences arising from it as they relate to her theory of the case. *Id.* at 236, 241.

Defendant argues that the prosecutor mischaracterized Jackson's testimony regarding how defendant acquired the steel pipe after the fighting ended. In relevant part, Jackson testified at trial as follows:

> *A.* He has a pipe, but he grabbed it out of Shay hands.
>
> *Q.* Okay.
>
> *A.* Two pipes.
>
> *Q.* Okay. How did that happen? How did that happen when - -
>
> *A.* When she was walking out the back yard he snatched it. He's like, no, no, stop. You know, he's talking to her. And she's doing her thing. And she walks by.
>
> *Q.* So, he grabbed one of the pipes?
>
> *A.* Yes.

In comparison, in her closing argument, the prosecutor stated:

> Now, eventually the fight did end. But it didn't end for Mr. Marshon Sturner. You heard testimony from [Jackson] who said that she saw Shay, who is

Sharonda Billingsley, run to the back of the house and come back with two metal pipes.

And she said that this was one of the pipes that was used that day. She said as she saw them come out *she handed one to* Mr. Sturner[.] [Emphasis added.]

On appeal, defendant argues that the prosecutor mischaracterized Jackson's testimony regarding how defendant acquired the pipe and that the effect of the mischaracterization amounted to the suggestion that defendant accepted the pipe from Billingsley in order to arm himself for battle. Although Jackson testified that defendant "grabbed" the pipe from Billingsley, whereas the prosecutor asserted that Billingsley "handed" the pipe to defendant, the principal point of the prosecutor's argument was that defendant obtained the pipe from Billingsley. The prosecutor did not mischaracterize Jackson's testimony in that respect. To the extent that the prosecutor arguably made any minor misstatement of fact regarding whether defendant "grabbed" the pipe or it was "handed" to him, the trial court cured any potential prejudice by instructing the jury, immediately after defense counsel's timely objection, that "[w]hat the lawyers say is not evidence," and by repeating in its final instructions that "[t]he lawyers' statements and arguments are not evidence." See *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Accordingly, any misstatement did not deny defendant a fair trial.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that defense counsel was ineffective for failing to introduce evidence that defendant suffered from untreated bipolar disorder and attention deficit hyperactivity disorder (ADHD) at the time of the offense. Defendant recognizes that this information could not have been used to negate the specific intent element of felonious assault. See *People v Carpenter*, 464 Mich 223, 241; 627 NW2d 276 (2001). Rather, defendant asserts that such evidence would have been relevant to whether he committed the felonious assaults because "evidence of his mental limitations and his usual hyperactivity would have been probative of the fact that his actions in wielding the pipe were misinterpreted by other witnesses and were actually innocent in nature."

Because defendant did not raise an ineffective assistance of counsel claim in a motion for a new trial or request a *Ginther*[1] hearing, our review of this issue is limited to errors apparent from the record. *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002).

Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *People v LeBlanc,* 465 Mich 575, 578; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). To make

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

this showing, defendant must overcome a strong presumption that counsel's actions were the product of sound trial strategy. *People v Carbin,* 463 Mich 590, 600; 623 NW2d 884 (2001). Defendant also bears the burden of proving the factual predicate of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

"Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey,* 237 Mich App 74, 76-77; 601 NW2d 887 (1999) (internal citations omitted). The failure to call particular witnesses or present other evidence constitutes ineffective assistance only if it deprives the defendant of a substantial defense. *Russell*, 297 Mich App at 716. "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

In this case, the defense presented at trial was that defendant did not wield a pipe at the Durrah brothers, but that instead Billingsley approached the victims with the pipe. In support of this theory, defense counsel elicited testimony from Doreen Jackson who testified that she was present for the entire fight and, although defendant had possession of a pipe at some point, the Durrah brothers had returned to their home before defendant obtained the pipe and it was instead Billingsley who went after the victims with a pipe. Counsel argued that Jackson should be believed because she was the "one person in this case that doesn't have an axe to grind . . . [she] appears to be the one neutral witness." In contrast, defense counsel argued that the Durrah brothers were not credible because they had a motive to lie and their testimony did not comport with other physical evidence.

In comparison to the defense presented at trial, defendant now claims that evidence of his mental illness would somehow have established that when he wielded a pipe he did so with an innocent intent and his actions were for some reason simply misunderstood by witnesses at the scene. As an initial matter, we are not persuaded that defendant has demonstrated the factual predicate of his claim. That is, although defendant states that he has been diagnosed with bi-polar syndrome and ADHD, he offers no information regarding his symptoms and no expert testimony on these conditions, meaning he offers us no reason to suppose that he acted innocently but, as a result of his diagnoses, his conduct was simply misconstrued as threatening.[2] Given that defendant has not provided an adequate explanation of this proposed defense, we cannot conclude that defendant was denied a substantial defense.

---

[2] For example, in *People v Yost*, 278 Mich App 341, 349, 357-358; 749 NW2d 753 (2008), on which defendant relies on appeal, the trial defense counsel attempted to introduce evidence of the defendant's limited intellectual capacity to explain how the defendant's intellectual capacity affected the defendant's ability to communicate, which was relevant to providing context for her behavior and remarks reported by various witnesses. In that case, however, unlike in the present case, the defense counsel had expert testimony to support his theories. See *id.* at 349. Here, defendant points to the bare fact of his diagnoses without support for his claim that such diagnoses are relevant to a substantial defense.

Furthermore, the defense now proposed by defendant involves the admission that defendant in fact wielded the pipe at the victims, and it is therefore wholly inconsistent with the defense assertion at trial that Billingsley, not defendant, approached the victims with the pipe. While potentially defendant could have advanced inconsistent defenses, see *People v Lemons*, 454 Mich 234, 245; 562 NW2d 447 (1997), on the record presented, we see nothing ineffective in counsel's strategic decision to focus on the assertion that defendant took no action with the pipe toward the Durrah brothers rather than to potentially confuse the jury by suggesting in the alternative that defendant might have wielded the pipe innocently. Cf. *People v LaVearn*, 448 Mich 207, 216 & n 11; 528 NW2d 721 (1995); *Dunigan*, 299 Mich App at 584. This seems particularly true given that we are hard pressed to understand how defendant's diagnoses would have provided him with a defense to the crimes charged, while in contrast he had the support of Jackson's testimony in claiming that he did not wield the pipe in a threatening manner. On the record presented, defendant was not denied a substantial defense and he has not overcome the presumption that defense counsel's failure to introduce the omitted evidence was a matter of sound trial strategy.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio