# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN HENRY GRANDERSON,

        Defendant-Appellant.

UNPUBLISHED
July 14, 2015

No. 321113
Saginaw Circuit Court
LC No. 13-038964-FC

Before: O'CONNELL, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant, John Henry Granderson, appeals as of right his convictions, following a jury trial, of conspiracy to commit murder, MCL 750.157a and MCL 750.316(a), first-degree arson, MCL 750.72, conspiracy to commit first-degree arson, MCL 570.157a and MCL 750.72, threatening a witness, MCL 750.122(7)(c), six counts of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, and six counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Granderson to serve terms of life imprisonment for conspiracy to commit murder, 17 years and five months' to 50 years' imprisonment for conspiracy to commit arson, 20 years and eight months' to 60 years' imprisonment for arson and each assault, seven to 15 years' imprisonment for witness threatening, two to seven and one-half years' imprisonment for felon in possession, and a consecutive term of two years' imprisonment for his felony-firearm convictions. We affirm.

## I. FACTS

Jeremy Prince testified that he attended middle school and high school with Granderson, codefendant Jemarcus Jovon Watkins,[1] and Anterio Patton. According to Prince, he attended a pre-prom party in May 2013. During the party, there was a commotion involving Patton. Phillip Hudson, a friend of Patton, testified that Patton and Evillis McGee "had a problem with each other." According to Prince, someone fired 12 or 13 shots into the crowd during the pre-prom party, and Ne-Ne McKinley was killed.

---

[1] This panel is also considering Watkins's appeal of his convictions for the same offenses.

-1-

Patton's mother testified that she was present at the pre-prom party with Patton. According to Patton's mother, she had just given Patton a hug when "the crowd went to backing up, and I seen some guys with some guns." The men with guns began shooting. Patton's sister testified that she was also at the pre-prom party and saw Watkins, Karon Thomas, and two other men shoot into the crowd.

Saginaw City Police Detective Matthew Gerow testified that he investigated the pre-prom shooting. According to Detective Gerow, McGee and Thomas were charged with murder in connection with McKinley's death. Detective Gerow testified that Patton testified at McGee and Thomas's preliminary examination. Patton's mother testified that Patton intended to testify at the murder trial on July 26, 2013.

Patton's home was attacked early in the morning on July 11, 2013. According to Prince, a friend dropped him off near Patton's home to meet his ex-girlfriend, who was at Patton's house. Patton was not there at the time, but Patton's family and some friends were present. At about 12:30 a.m., a van drove by the house. About three minutes later, Prince saw someone approach the house with something in one hand. Prince yelled, grabbed his ex-girlfriend, and then heard "the loudest bang I ever heard in my life." Prince realized that he, his ex-girlfriend, and the house were on fire. The people outside began shooting at the house.

Prince extinguished the fire that was on him and then went to retrieve a gun. When he looked outside, he saw that the front of the house was on fire and Granderson was shooting an assault-style rifle at the house. Prince tried to get everyone into the house's basement, but once there, he realized that his ex-girlfriend was not present. Prince went back upstairs to find her and saw someone enter the home, carrying a handgun:

> He was like right there on the porch, coming into the door, but I see him, but he's look around like, and I see him. . . . [W]hen we made eye contact, his eyes got big, because I was shocked about who I seen.

Prince then testified that the person was Watkins, who ran back outside. Prince found his ex-girlfriend and went into the basement to wait for police and firefighters to arrive. Prince believed Granderson and Watkins had set the house on fire and then waited for the occupants to come outside so that they could "pick [them] off."

According to Hudson, who was also in Patton's home at the time of the arson, at least three people were shooting into the home. Hudson testified that he believed that Granderson was one of those people, but he was not entirely certain of his identification because he was under the influence of drugs at the time.

Detective Gerow testified that he also investigated the arson. According to Detective Gerow, he visited Prince in the hospital shortly after the arson. Prince was initially hesitant to speak with him, but Prince eventually identified Granderson and Watkins, and he seemed "100 percent positive about his identification."

Prince testified that he told officers that he thought Vanity Mims was driving the van, but he was not certain. According to Prince, "[t]he reason I brought her up was because I know that Vanity was . . . associated with [Watkins]." Prince also testified that the word "on the street"

-2-

was that Mims was going to "come to court and testify and say that [Watkins] was with her." Officer Coleman testified that he interviewed Prince, who told him that Mims "was going to come into court and attempt to be an alibi witness . . . on behalf of [Granderson and Watkins]." Mims did not testify at the trial.

Granderson testified that he was not affiliated with any gang, but he was "familiar with the East Side because I stay over there." According to Granderson, after he finished a term of incarceration in December 2011, he kept to himself and did not associate with his old friends. Granderson was especially reluctant to associate with people who carried weapons. In rebuttal, Saginaw Police Department Officer Erik Skabardis testified that on June 12, 2012, he encountered Granderson among East Side people "hanging out" in a vacant lot. He discovered "a bag full of guns" not more than 30 feet from the individuals.

Granderson also testified that on the night of the arson, he was at his sister's home in the Sheridan Park neighborhood. Granderson's sister Brittany Houston testified that Granderson stayed with her and her friend, Ja'Quise O'Daniels, on July 11, 2013. Brittany Houston testified that Granderson watched O'Daniels's one-year-old child while O'Daniels went to Wal-Mart from about midnight to 1:40 a.m. Granderson's sister Brandy Houston also testified that Granderson was in the home at about 1:30 a.m. when she woke up to use the bathroom, and that she knew that O'Daniels had gone to Wal-Mart that evening because she noticed that there were new groceries in the house.

O'Daniels testified that Granderson watched her one-year-old child while she went to Wal-Mart on the night of July 11, 2013. Granderson was still present and awake when she returned from the store. However, on cross-examination, O'Daniels acknowledged that the card she used to purchase groceries showed a purchase at Wal-Mart on July 20, 2013, at about 1:00 a.m., but no purchases on July 11, 2013. O'Daniels admitted that she had made a mistake about the date on which she purchased groceries.

The jury found Granderson guilty of the crimes previously described.

## II. EVIDENTIARY ISSUES

### A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). The trial court abuses its discretion when its outcome falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). We review de novo the preliminary questions of law surrounding the admission of evidence. *Duncan*, 494 Mich at 723.

However, a defendant must timely and specifically challenge an issue before the trial court to preserve it for this Court's review. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). In this case, Granderson challenged the admission of the photograph of McKinley's body, the photograph of him holding an assault rifle, the photographs of him with members of the East Side gang, and the hearsay evidence regarding alibi fabrication. Accordingly, these issues are preserved. However, Granderson did not specifically challenge the admission of the pre-prom shooting res gestae evidence, Officer Skabardis's rebuttal testimony,

-3-

judicial questioning, prosecutorial misconduct, the propriety of his joint trial, or the effectiveness of defense counsel. These issues are not preserved.

We review unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and the error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings. *Id*. Regarding issues of judicial bias, we relax these standards, recognizing that a party may be reluctant to challenge a trial judge's actions on the bench. See *People v Moore*, 161 Mich App 615, 629-620; 411 NW2d 797 (1987).

## B. PHOTOGRAPHIC EVIDENCE

Granderson raises several challenges to photographs that the prosecutor admitted at trial. First, he challenges the photograph of McKinley's body following the pre-prom shooting, contending that it was unnecessarily gruesome and prejudicial. We disagree.

The Michigan and United States Constitutions provide that no person shall be deprived of property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. Criminal prosecutions must comply with " 'prevailing notions of fundamental fairness.' " *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006), quoting *Pennsylvania v Ritchie*, 480 US 39, 56; 107 S Ct 989; 94 L Ed 2d 40 (1987). The improper admission of evidence may deprive a defendant of due process if it "infused the trial with unfairness." *Estelle v McGuire*, 502 US 62, 75; 112 S Ct 475; 116 L Ed 2d 385 (1991) (quotation marks and citation omitted).

The trial court may only admit relevant evidence. MRE 402. Evidence may be relevant even when it does not pertain to an element of an offense, as long as it pertains to a matter in controversy. *People v McGhee*, 268 Mich App 600, 637; 709 NW2d 595 (2005). The res gestae of a crime includes the facts and circumstances surrounding its commission. *People v Sholl*, 453 Mich 730, 742; 556 NW2d 851 (1996); *US v Hardy*, 228 F3d 745, 748 (CA 6, 2000). The res gestae of an offense is generally relevant and admissible. *Sholl*, 453 Mich at 741; *Hardy*, 228 F3d at 748.

But MRE 403 provides that, even if evidence is relevant, the trial court may not admit it if the danger of its prejudicial effect substantially outweighs its probative value. This occurs when the evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

Under this rubric, the trial court must weigh the probative value and prejudicial effect of gruesome photographs before admitting them. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (2008). The trial court may not admit such photographs if they "serve the purpose solely of inflaming the minds of the jurors and prejudicing them against the accused," but it may admit photographs that are relevant and material. *Id*. at 77. However, photographs are not rendered inadmissible merely because they are gruesome, *People v Eddington*, 387 Mich 551, 562-563; 198 NW2d 297 (1972), or because a witness "can orally testify about the information contained in the photograph. *Mills*, 450 Mich at 76.

-4-

We are not convinced that the trial court's decision to admit the photograph of McKinley's body fell outside the range of principled outcomes. In this case, the prosecution admitted a single photograph of McKinley's body, lying on the ground in what appears to be a parking lot. Notably, the prosecution sought to admit two photographs, but the trial court ruled that only one photograph was required for the prosecution's purpose. The trial court ruled that the second photograph did not have sufficient probative value to be relevant. It is clear from the record that the trial court considered the probative value and prejudicial effect of the photographs before ruling on their admissibility. Further, the photograph did not serve the sole purpose of inflaming the jury. The prosecution's theory was that Granderson's motive to the crime was to intimidate witnesses from testifying in McGee's trial involving McKinley's murder, and the pre-prom shooting was part of the res gestae of the arson offense. Because the photograph was otherwise relevant, the prosecution did not need to limit its presentation to oral testimony.

We conclude that the trial court did not abuse its discretion by admitting the photograph. To the extent that Granderson contends that the prosecution's use of this photograph constituted misconduct, we conclude that he has abandoned that unpreserved issue by failing to include it in his statement of questions presented and by offering only a cursory analysis. See MCR 7.212(C)(5); *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004).

Second, Granderson contends that the prosecution improperly admitted a photograph of him holding an assault rifle because it allowed the jury to make unfair inferences. We disagree.

Generally, MRE 404(b)(1) prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts to prove that person's character or propensity to engage in that type of action. Such evidence

> may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material. . . . [MRE 404(b)(1).]

MRE 404(b)(1) is a rule of inclusion, not exclusion. *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993).

In this case, Shawntanise Conway testified that she was in the Sheridan Park area early on the morning of July 11, 2013, when she saw three men. According to Conway, one had "some fire" in one of his hands, and a different man had a long black object that "was a gun, I guess." When asked to describe the gun, Conway said it was "a big gun."

During Conway's testimony, the prosecution sought to admit a photograph of Granderson holding an assault-style rifle. Defense counsel challenged the photograph on the ground that the photograph was from another case in 2009. The prosecutor argued that the purpose of the photograph was "to demonstrate for the jury the type of weapon that was used visually as well as [Granderson's] apparent familiarity with that type of a weapon, and also goes to issues of identification of the [Granderson] as well along with his . . . I guess, penchant for having that type of weapon[.]" The trial court ruled that the photograph was admissible. After the

photograph was admitted, Conway testified that the gun she saw on the night of the arson was similar to the one in the photograph, except a different color.

We conclude that the trial court did not abuse its discretion by admitting the photograph of Granderson holding an assault-style rifle. In this case, the photograph was not admitted solely to establish propensity or a bad act. Rather, the prosecution also sought to admit the photograph for at least two proper purposes: an attempt to establish Granderson's identity and to assisting Conway in describing what she saw. The trial court's decision to admit the photograph did not fall outside the reasonable range of outcomes in this case. Further, to the extent that Granderson contends that admission of this photograph constituted prosecutorial misconduct, we reject this argument. The prosecution's good-faith effort to admit relevant evidence is not misconduct. *People v Abraham*, 256 Mich App 265, 278; 662 NW2d 836 (2003).

Third, Granderson contends that photographs of him with members of the East Side gang improperly implied guilt by association, in violation of the Michigan Supreme Court's decision in *People v Bynum*, 496 Mich 610; 852 NW2d 570 (2014), and therefore denied him a fair trial. We disagree.

In *Bynum*, the Michigan Supreme Court considered the relevance of expert testimony evidence regarding gangs, gang membership, and gang culture. *Id*. at 615. It concluded that the trial court may admit expert testimony when there is "evidence that the crime at issue is gang-related," but that an expert "may not use a defendant's gang membership to prove specific instances of conduct in conformity with gang membership . . . ." *Id*. at 615, 635-636.

We reject this argument because this case is highly distinguishable from *Bynum*. This case involved no expert testimony regarding gang affiliation, only lay witness testimony about Granderson's associations. There was extensive evidence that the crime at issue in this case was gang-related—indeed, the res gestae evidence established that the arson was part of a witness intimidation attempt regarding a gang-related murder. Finally, the evidence was not used to attempt to show that Granderson's conduct conformed to general gang-related conduct.

Finally, while Granderson contends that these photographs were "clearly" unfairly prejudicial, Granderson did not challenge the relative weight of the probative value and prejudicial effect of the photographs below. It is particularly important that the appellant preserve challenges to the relevance of evidence under MRE 403 because the trial court has the best opportunity to contemporaneously assess the relative weight of the evidence's probative value and prejudicial effect. *Blackston*, 481 Mich at 462. However, we will briefly explain why the trial court did not plainly err by admitting the photographs.

A person's motive to commit a crime may be highly relevant. *People v Fisher*, 449 Mich 441, 453; 537 NW2d 577 (1995). Additionally, evidence that affects the credibility of a witness is also highly relevant. *People v King*, 297 Mich App 465, 476-477; 824 NW2d 258 (2012). The fact that evidence is damaging does not make it unfairly prejudicial. *Mills*, 450 Mich at 75. Evidence is unfairly prejudicial when evidence is only marginally probative, but there is a danger that the trier of fact may give it undue or preemptive weight. *Blackston*, 481 Mich at 462.

In this case, the gang-related photographs established Granderson's relationship to people with whom he claimed he was no longer affiliated. By establishing this relationship, the photographs also established the motive for the crime. The photographs were thus highly relevant and, since there is also no indication that the jury would have given this evidence undue or preemptive weight, they were not overly prejudicial. The trial court did not plainly err by admitting the evidence.

## C. PRIOR BAD ACTS

Granderson contends that the trial court erred by admitting bad acts evidence of the pre-prom shooting because he did not participate in the shooting. We disagree.

MRE 404(b)(1) prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts to prove *that person's* character or propensity to engage in that type of action. But Granderson recognizes that he was not connected to the pre-prom shooting incident. It was simply not another crime, wrong, or act of *Granderson's* for the purposes of MRE 404(b), and the prosecution did not introduce it to attempt to establish Granderson's character. Rather, as previously discussed, it was part of the offense's res gestae. Granderson's attempt to characterize the evidence as bad acts evidence is incorrect.

## D. HEARSAY TESTIMONY

Granderson contends that the improper admission of hearsay testimony, specifically statements including Prince's statement regarding rumors that Granderson was fabricating an alibi with Mims, violated his constitutional rights to confrontation and a fair trial. We disagree.

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible, unless it is subject to a hearsay exception. MRE 802; *Duncan*, 494 Mich at 724. The improper admission of hearsay may implicate the defendant's state and federal constitutional rights. *People v Dendel (On Second Remand)*, 289 Mich App 445, 452-453; 797 NW2d 645 (2010). See *Crawford v Washington*, 541 US 36, 50-51; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

In this case, Prince testified that he told officers that he thought Mims was driving the van, and rumors indicated that Mims would come to court to provide an alibi for Granderson and Watkins. The matter asserted was that Granderson was fabricating an alibi with Mims. Mims did not offer an alibi that Prince's testimony about rumors on the street could prove or disprove. Therefore, the evidence was not offered to establish the truth of the matter asserted in the alleged hearsay statement—the truth or falsity of Mims's supposed alibi. Instead, Prince himself testified that he told officers this information because Mims had an established relationship with Granderson and Watkins. We conclude that Granderson has simply not established that this evidence was hearsay as it related to the fabrication of an alibi.

## E. REBUTTAL TESTIMONY

Granderson contends that the trial court improperly admitted Officer Skabardis's rebuttal testimony that he discovered Granderson in a vacant lot with members of the East Side gang and a bag of guns on June 12, 2012. We disagree.

"Rebuttal evidence is admissible to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same." *People v Figgures*, 451 Mich 390, 399; 547 NW2d 673 (1996) (quotation marks and citations omitted). Evidence is proper as rebuttal evidence if it is responsive to evidence introduced or theories developed in the other party's case in chief. *Id*. at 399. However, the trial court may abuse its discretion when it allows rebuttal evidence on secondary issues. *Id*. at 398. Evidence that affects the credibility of a witness is relevant. *King*, 297 Mich App at 476-477.

In this case, Granderson testified that he stopped associating with old friends and people who had or used weapons after his release from prison in December 2011. Granderson thus placed his associations directly at issue. That he was found in July 2012 associating with the individuals that were his old friends, who were in close proximity to a bag of guns, tended to contradict and disprove Granderson's statements about his associations. The rebuttal evidence was highly relevant because it directly pertained to Granderson's credibility. We conclude that the trial court did not plainly err by admitting this evidence.

## III. JUDICIAL QUESTIONING

Granderson contends that the trial court's decision to question his alibi witnesses deprived him of a fair and impartial trial. We disagree.

Generally, this Court reviews for an abuse of discretion the trial court's conduct during a trial. See *People v Romano*, 181 Mich App 204, 220; 448 NW2d 795 (1989). As discussed above, due process requires that the defendant receive a fundamentally fair trial. *Anstey*, 476 Mich at 460. The trial court may question a witness in order to clarify the witness's testimony or elicit additional information. *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). However, the trial court "must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, unfair, or partial." *Id*.

In part, the trial court questioned Brittany Huston as follows:

THE COURT: And you knew he couldn't have done it is what you're telling us because he was at the house sleeping?

THE WITNESS: Correct. Well, he was awake. He had awaken [sic].

THE COURT: Did you go down and tell the police that?

THE WITNESS: No, I didn't.

THE COURT: Why not?

THE WITNESS: I didn't know that I was supposed to.

-8-

THE COURT: Okay. I don't have any further questions.

The trial court also questioned Brandy Houston as follows:

THE COURT: Why wouldn't you go to the police when you . . . found out that [Granderson] was charged with crimes, and you knew he was in the apartment that night? You're telling us he couldn't have been there because he was in the apartment, correct?

THE WITNESS: No.

THE COURT: Is that a correct statement?

THE WITNESS: Yes.

THE COURT: Okay. Why wouldn't you run down to the police the next day and be banging on Mr. Gerow's door?

THE WITNESS: I don't know.

Reviewing this questioning in context with the trial court's additional questioning, we conclude that the trial court's questioning was proper. The questions and manner of questioning did not demonstrate partiality. Only Brandy Houston's answer was even potentially damaging to Granderson's case, as the jury could have found it entirely plausible that Brittany Houston did not know that she was supposed to speak to Detective Gerow. Further, we will not view Brandy Houston's answer in hindsight. When the trial court asked Brandy Houston why she did not speak to the police, her answer could have been neutral or positive to Granderson. For instance, she may have testified that she was frightened of speaking to the police, particularly in light of the attack on Patton's home, or that she had in fact attempted to speak to Detective Gerow.

Even more importantly, we are not convinced that the trial court's questioning prejudiced Granderson by affecting the outcome of his trial. In this case, Granderson's alibi hinged on watching O'Daniels's child while she shopped at Wal-Mart. Both Brittany and Brandy Houston specifically recalled that O'Daniels had gone to Wal-Mart early in the morning on that day that Granderson was watching the child. However, O'Daniels admitted that she was mistaken about the date on which she went to Wal-Mart. Accordingly, we are not convinced that the trial court's questioning influenced the jury in any way, much less to the detriment of Granderson's case.

IV. SUFFICIENCY OF THE EVIDENCE

A. STANDARD OF REVIEW

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992); *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Thus, this Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact

could find that the prosecution proved the crime's elements beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

## B. CONSPIRACY

Granderson contends that the prosecution presented insufficient evidence to support his convictions of conspiracy to commit arson and conspiracy to commit murder because there was no evidence of an agreement between Granderson and the other participants. We disagree.

"Any person who conspires together with 1 or more persons to commit an offense prohibited by law . . . is guilty of the crime of conspiracy . . . ." MCL 750.157a. Conspiracy requires a defendant to have "both the intent to combine with others and the intent to accomplish the illegal objective." *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001).

"The gist of the offense of conspiracy lies in the unlawful agreement." *People v Carter*, 415 Mich 558, 568; 330 NW2d 314 (1982), overruled in part on other grounds by *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984) (quotation marks and citation omitted). But the prosecution does not need to provide *direct* proof of an agreement. *Id*. "It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact." *Id*. (quotation marks and citation omitted). Circumstantial evidence and reasonable inferences arising from that evidence can sufficiently prove the elements of a crime. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Further, jurors may use common sense and everyday experience to evaluate evidence. *People v Simon*, 189 Mich App 565, 568; 473 NW2d 785 (1991).

In this case, the testimony established that Granderson, Watkins, and at least one other person arrived at Patton's house, armed with weapons. Prince testified that one of the men had something in his hand, which he threw at the house. The house immediately caught on fire, and then the other two men—including Granderson, who was armed with an assault-style weapon—shot at the house. Considering this circumstantial evidence and allowing the jury to apply common sense and every day experience to it, a rational jury could find beyond a reasonable doubt that Granderson and the other men involved in the arson intended to combine together for unlawful purposes. It is incredibly unlikely, in the absence of a prior agreement, three armed men would independently arrive at Patton's house at the same time of the morning and act in concert to set the house on fire and shoot at it. We conclude that the prosecution presented sufficient evidence of an agreement between the participants in the arson and shooting.

## C. ASSAULT WITH INTENT TO COMMIT MURDER

Granderson also contends that insufficient evidence supported his convictions of assault with intent to commit murder because there was no evidence that he intended to kill, rather than simply frighten, the occupants of the house. We disagree.

"The elements of assault with intent to commit murder are: (1) an assault, (2) with the specific intent to commit murder, (3) which, if successful, would make the killing a murder." *People v Rockwell*, 188 Mich App 405, 411; 470 NW2d 673 (1991). The defendant's intent must be to specifically kill the victim; recklessness or the intent to inflict great bodily harm is not sufficient. *People v Cochran*, 155 Mich App 191, 193-194; 399 NW2d 44 (1986). Again, we

note that circumstantial evidence may provide sufficient proof of a defendant's intent. *Kanaan*, 278 Mich App at 622.

In this case, Granderson was part of a group of men who set fire to a home and shot at its occupants. Prince testified that it appeared to him that the assailants wanted to set fire to the home and then pick the occupants off one by one as they attempted to escape. The jury could reasonably infer from the evidence that Granderson's actions were beyond reckless and that he specifically intended to kill the occupants of the home, rather than merely frighten them. We conclude that the prosecution presented sufficient evidence to support Granderson's assault convictions.

## V. SEVERANCE AND INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Granderson contends that his joint trial with codefendant Watkins was unduly prejudicial, and the trial court erred when it failed to order separate trials. We disagree.

"[T]he interests of justice and judicial economy support joint trials, and a defendant does not have the absolute right to a separate trial." *People v Etheridge*, 196 Mich App 43, 52; 492 NW2d 490 (1992). However, MCR 6.120(C) requires the trial court to sever charges on unrelated offenses for separate trials if the defendant moves for separate trials. MCR 6.120(B) provides that offenses are related if they are based on

> (a) the same conduct or transaction, or
>
> (b) a series of connected acts, or
>
> (c) a series of acts constituting parts of a single scheme or plan.

The trial court may also permissively order separate trials if severance "will promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants." MCR 6.210(D). Before permissively ordering severance, the trial court should consider "the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial." MCR 6.210(D).

"Joinder of . . . other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." *People v Williams*, 483 Mich 226, 237; 769 NW2d 605 (2009), quoting *United States v Harris*, 635 F2d 526, 527 (CA 6, 1980) (alteration and quotation marks omitted). A defendant is also prejudiced by a joint trial when it restricts the defendant's ability to present a defense. *People v Hana*, 447 Mich 325, 360; 524 NW2d 682, amended 447 Mich 1203 (1994). A defendant's ability to present a defense is restricted when codefendants present mutually antagonistic defenses. *Id*. at 349.

We conclude that the trial court did not err by failing to sua sponte sever Granderson's trial from codefendant Watkins's trial. In this case, Granderson and Watkins did not present mutually antagonistic defenses: Granderson's theory was that he was not present, and Watkins's theory was that he was misidentified as being present. Neither defense implicated the other

defendant. Further, while Granderson baldly asserts that the jury heard evidence it would not have heard if Watkins's trial had been separate, Granderson does not articulate why certain evidence would not have been admissible at his separate trial. Granderson may not simply state a position, fail to support it, and expect that this Court create an argument and reverse on that basis. See *Matuszak*, 263 Mich App at 59.

Finally, Granderson contends that defense counsel provided ineffective assistance by failing to advocate for separate trials. We disagree.

A criminal defendant has the fundamental right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). However, a defendant must move the trial court for a new trial or evidentiary hearing to preserve the defendant's claim that his counsel was ineffective. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). When the trial court has not conducted a hearing to determine whether a defendant's counsel was ineffective, our review is limited to mistakes apparent from the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012).

To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *Strickland*, 466 US at 690; *Matuszak*, 263 Mich App at 58. When considering an unpreserved claim of ineffective assistance of counsel, we must consider the possible reasons for counsel's actions. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012); *Cullen v Pinholster*, 563 US ___, ___; 131 S Ct 1388, 1407; 179 L Ed 2d 557, 578 (2011). A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *Pickens*, 446 Mich at 312.

We conclude that Granderson has not shown that defense counsel was ineffective for failing to request separate trials. In this case, both defendants were involved in the same criminal transaction, so mandatory severance was not required, and there is no indication that the trial court would have permissively ordered separate trials. This complex case involved dozens of exhibits and several days of testimony. Further, trial counsel may have reasonably believed that a joint trial would be beneficial to Granderson. Granderson and Watkins were not presenting antagonistic defenses—to the contrary, if the jury believed Watkins's misidentification theory, it also could have acquitted Granderson. We are not convinced that trial counsel's decision not to request separate trials was unreasonable, nor are we convinced that it would have prejudiced Granderson. As discussed above, Granderson has not demonstrated that separate trials would have resulted in the presentation of less, or less prejudicial, evidence.

## VI. CONCLUSION

Though Granderson raises a litany of issues on appeal, none of his assertions have merit. We conclude that sufficient evidence supported Granderson's convictions and that the trial

court's evidentiary rulings were not an abuse of discretion. We also reject the remainder of Granderson's issues for the reasons already stated.

     We affirm.

     /s/ Peter D. O'Connell
     /s/ Donald S. Owens