# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

EMERSON LAMONT BEVERLY,

      Defendant-Appellant.

UNPUBLISHED
December 10, 2015

No. 322419
Saginaw Circuit Court
LC No. 13-039012-FC

Before: SHAPIRO, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM.

Defendant, Emerson Lamont Beverly, appeals as of right his convictions, following a jury trial, of first-degree home invasion, MCL 750.110a(2), and assault with intent to commit murder, MCL 750.83. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve consecutive terms of 20 to 40 years' imprisonment for his first-degree home invasion conviction and 30 to 45 years' imprisonment for his assault conviction. We affirm defendant's convictions, but remand his sentence for a *Crosby*[1] hearing.

## I. FACTUAL BACKGROUND

According to the victim, she and defendant dated from September 2012 until March 2013. Defendant spent five or six nights a week at her home, but he did not store any belongings there. The victim's home was equipped with an alarm system. On the days defendant left the home after the victim did, she gave defendant a key so that he could lock up and she would retrieve the key from him later. She did not give him the code to the alarm system.

The relationship began to deteriorate in March 2013. On March 12, 2013, they had a verbal altercation. Defendant told the victim that he would kill her rather than allow her to be with someone else. On March 19, the victim told defendant that she "wanted to take a step back" in their relationship. As she was getting ready for work, defendant grabbed her around the neck and threw her to the floor. She injured her nose and called 911. After March 19, the victim no

---

[1] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

longer considered herself in a dating relationship with defendant and no longer gave him a key to her home, but she allowed him to spend the night on a less frequent basis.

The victim testified that in the evening of April 11, 2013, she woke up to the sound of her alarm beeping and saw defendant standing over her bed. Defendant stated "I told you I was going to kill you" and began striking the victim with a hard object. Defendant dragged her out of her bed and struck her with something that broke. He then dragged the victim into the kitchen, over broken glass, and repeatedly struck her on the head with a frying pan. When she lifted her head, the victim saw defendant with two knives in his hands. The alarm siren stopped, defendant dropped the knives, said he was not done with her yet, and left.

According to Saginaw Police Department Officer Anthony Teneyuque, when he made contact with the victim, she was covered in blood. Officer Teneyuque later entered the victim's home, where he found large blood spatters, puddles of blood on the kitchen floor, a broken frying pan with blood on it, and a knife with a bloody handle. Sergeant Mark Scott testified that the victim appeared severely injured. According to paramedic Whitney Gavord, the victim had multiple lacerations to her head, hands, feet, legs, eye, and cheek, but the bleeding was not life-threatening. Dr. Andrew Bazaki prepared a medical report that stated that, among other medical issues, the victim had significant trauma to her left eye, a fractured wrist, and crush injuries to the tips of her fingers. The victim testified that she suffered permanent damage to her eye and now requires eyeglasses.

The jury found defendant guilty as previously described. Defendant now appeals.

## II. SUFFICIENCY OF THE EVIDENCE

Through counsel, defendant contends that the evidence was insufficient to prove that he broke into the victim's home or that he intended to kill her. We disagree.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Patterson*, 428 Mich 502, 525; 410 NW2d 733 (1987). We review de novo a defendant's claim that the evidence was insufficient to sustain his or her conviction. *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010). We must view the evidence in the light most favorable to the prosecution, drawing all reasonable inferences and resolving all credibility determinations in support of the jury's verdict. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). We will not interfere in the jury's role to determine the weight of the evidence and the credibility of the witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012).

The elements of first-degree home invasion are: (1) the defendant either broke and entered a dwelling or entered a dwelling without permission; (2) the defendant either intended when entering to commit a felony, larceny, or assault in the dwelling or at any time while entering, present in, or exiting the dwelling committed a felony, larceny, or assault; and (3) while the defendant was entering, present in, or exiting the dwelling, he was either armed with a dangerous weapon or another person was lawfully present in the dwelling. *People v Wilder*, 485 Mich 35, 43; 780 NW2d 265 (2010). The existence of a dating relationship does not give a

person the right to be present in his or her partner's home. *People v Dunigan*, 299 Mich App 579, 583; 831 NW2d 243 (2013).

Defendant contends that he had permission to be in the victim's home. Defendant stayed at the victim's home periodically, even after he and the victim broke up. However, the victim testified that she was the sole lessee of the home, had never given defendant the right to enter or leave freely, and had never given defendant the alarm code. We conclude that sufficient evidence supported defendant's home invasion conviction because the jury could reasonably conclude from this evidence that defendant entered the victim's home without permission. See *id*.

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Plummer*, 229 Mich App 293, 305; 581 NW2d 753 (1998). The jury may infer the defendant's intent to kill from circumstantial evidence. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). This evidence may include the use of a weapon, threats, and any other circumstances. *People v Brown*, 267 Mich App 141, 149 n 5; 703 NW2d 230 (2005).

Defendant contends that he did not have the intent to kill the victim because he could have, but did not, stab her with the knife. However, the victim testified that defendant struck her repeatedly in the head with various blunt objects. He did so with enough force to break the handle of a frying pan. Witnesses testified that the victim was covered in blood and there were puddles of blood on the kitchen floor. Defendant struck the victim so forcefully that the victim's mother found blood spatter on the ceiling when she was cleaning the victim's home. Additionally, the victim testified that defendant threatened to kill her before, during, and after the incident. Viewing the evidence in the light most favorable to the prosecution, we conclude that a reasonable jury could find that defendant assaulted the victim with the intent to kill her.

## III. EVIDENTIARY CHALLENGES

In his pro-se brief filed pursuant to Michigan Supreme Court Order 2004-6, Standard 4, defendant raises several issues regarding the admission of evidence.

This Court reviews for an abuse of discretion preserved challenges to the trial court's evidentiary rulings. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). Defendant's challenge to the other acts evidence and cell phone records are preserved, but defendant did not challenge admission of the photographs below, so that issue is unpreserved. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). We review unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and the error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings. *Id*.

First, defendant contends that the trial court erred by admitting photographs of the victim's house and injuries that the victim's mother took because a police officer testified that he did not know when the pictures were taken. The victim laid a proper foundation for the admission of the photographs because she testified that they fairly and accurately represented their contents. See MRE 901; *In re Robinson*, 180 Mich App 454, 460; 447 NW2d 765 (1989).

-3-

Any inconsistencies regarding the contents of the photographs and the police testimony went to the weight of the evidence, not its admissibility. See *People v Barrera*, 451 Mich 261, 289; 547 NW2d 280 (1996). We conclude that defendant has failed to establish that admitting the photographs was a clear error.

Second, defendant asserts that admission of his other acts of domestic violence against the victim was improper character evidence because it showed his propensity to engage in violence.

MCL 768.27b(1) provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under [MRE 403]."[2] A household member includes someone with whom the defendant was formerly in a dating relationship. MCL 768.27b(5)(b)(*iv*). This statute explicitly allows other acts evidence in domestic violence cases to be admitted for propensity purposes. *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010). In this case, the trial court was permitted to admit evidence of domestic violence for propensity purposes, and there is no indication that the brief testimony regarding the other acts was substantially more prejudicial than probative under MRE 403. We conclude that defendant's argument lacks merit.

Third, defendant contends that the trial court improperly excluded a cell phone bill that showed that the victim called him on April 10, 2013. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Generally, hearsay is not admissible. MRE 802. However, MRE 803(6) provides an exception for records or reports "made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity." To certify a record of a regularly conducted business activity, the proponent must submit an affidavit from the custodian of the record. MRE 902(11).

In this case, defendant sought to admit the cell phone records through the testimony of his mother. There is no indication in the record that defendant's mother was a custodian of the cell phone bills or that defendant provided the affidavit required by MRE 902(11). We conclude that the trial court did not err by excluding this evidence as hearsay.

IV. PROSECUTORIAL ERROR

Through counsel, defendant contends that the prosecution committed error by denigrating defense counsel and commenting on defendant's decision not to testify. We disagree.

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). The prosecutor has

---

[2] MRE 403 excludes evidence that is substantially more prejudicial than probative.

committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). We must evaluate instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's comments in context, and in light of the defendant's arguments and the evidence presented in the case. *Id*. at 64.

First, defendant contends that the prosecutor denigrated defense counsel by implying during close arguments that counsel had tried to mislead the jury by using the phrases "red herrings" and "smoke and mirrors." A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury. *Unger*, 278 Mich App at 238. A prosecutor may not personally attack defense counsel. *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003).

Reading the prosecutor's statements in context, we conclude that the prosecutor did not denigrate defense counsel with these remarks. The prosecution did not accuse defense counsel of attempting to mislead the jury. Rather, the prosecutor urged the jury to focus on some evidence instead of other evidence, referring to certain pieces of evidence as "red herrings" and "smoke and mirrors." The prosecution did not denigrate or attack defense counsel.

Second, defendant contends that the prosecutor impermissibly infringed on his right to remain silent when the prosecutor repeatedly argued that the evidence, including the victim's description of the assault, was uncontroverted.

The prosecutor may not comment on a defendant's silence at trial. *Griffin v California*, 380 US 609, 615; 85 S Ct 1229; 14 L Ed 2d 106 (1965). But this prohibition extends no farther than the reach of the defendant's right not to testify, and the prosecutor may observe that the evidence against a defendant is uncontroverted or undisputed, even if the defendant is the only person who could have contradicted the evidence. *People v Fields*, 450 Mich 94, 110, 115; 538 NW2d 356 (1995).

Again, considering the prosecutor's remarks in context, we conclude that they were not improper. The prosecutor did not remark on defendant's decision not to testify. Rather, the prosecutor's focus was on the evidence showed rather than on defendant. We conclude that the prosecutor's argument was within the bounds of propriety.

V. JUDICIAL MISCONDUCT

In his pro-se brief, defendant asserts that the trial judge improperly questioned five witnesses in order to elicit testimony favorable to the prosecution.

To preserve an issue of judicial bias, a party must raise the claim before the trial court. MCR 2.003(D); *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). Where a defendant has not done so, we review the issue for plain error. *Id*.; *Carines*, 460 Mich at 763.

A trial judge may question witnesses. MRE 614(b). A defendant is entitled to a "neutral and detached magistrate." *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996) (quotation marks and citation omitted). The trial judge should take care to ensure that his or her

questions "are not intimidating, argumentative, prejudicial, unfair, or partial." *Id.* Also see *People v Stevens*, 498 Mich 162, 174-175; ___ NW2d ___ (2015).

We have reviewed the trial court's questions and conclude that they did not implicate judicial bias. The judge phrased the questions neutrally, and they elicited information helpful to both the prosecution and the defense. The judge specifically prefaced the questions with a curative instruction—that the judge was not being critical of the witnesses or attorneys and did not want the jury to "imply one way or another" from the questions asked. We conclude that the judicial questioning in this case was proper.

## VI. SENTENCING ISSUES

### A. PRIOR RECORD VARIABLES

Defendant's contentions regarding his prior record variables (PRVs) are primarily based on his mistaken belief that the trial court could not count offenses that occurred ten years before the sentencing offense. The trial court may count offenses unless there is "a gap of 10 or more years between a discharge date and a subsequent commission date." *People v Billings*, 283 Mich App 538, 552; 770 NW2d 893 (2009). The 10-year gap must be free of *any* convictions. *People v Reyna*, 184 Mich App 626, 632; 459 NW2d 75 (1990). Defendant had convictions in 1989, 1991, 1994, 1996, 2000, 2008, 2009, and 2013. The longest gap in defendant's convictions was only 8 years from conviction date to conviction date—the length between his *discharge* date for his 2000 conviction and his 2008 conviction was even smaller. The trial court did not err by considering all of defendant's prior convictions.

We have considered the remainder of defendant's PRV issues and conclude they are without merit. There is no indication that the trial court improperly counted his juvenile adjudications, and MCL 777.57(2)(c) provides that a concurrent felony conviction that will result in a *mandatory* consecutive sentence may not be used to score PRV 7—in this case, the trial court sentenced defendant to concurrent terms under MCL 750.110a(8), a *discretionary* statute, and so this language did not apply.

### B. OFFENSE VARIABLES AND *LOCKRIDGE*

Defendant contends that the trial court improperly assessed points under OVs 1, 3, and 7. This Court reviews an unpreserved scoring issue for plain error affecting substantial rights. *Kimble*, 470 Mich at 312. For preserved scoring issues, we review de novo the interpretation and application of the sentencing guidelines and review for clear error the trial court's factual determinations. *People v Hardy*, 494 Mich 430, 438; 835 W2d 340 (2013). A preponderance of the evidence must support the trial court's factual determinations. *Id*.

The prosecutor concedes that the trial court erred by assessing points under OV 1 because there was no evidence that the victim was cut with a cutting or stabbing weapon. However, the OV score of 145 as scored by the trial court placed defendant in OV level VI. See MCL 777.16d; MCL 777.62. When reduced by 25 points, defendant's OV score is 120 and remains in level VI. This error did not change defendant's recommended minimum sentence.

Regarding OV 3, MCL 777.33(c) authorizes a score of 25 points for "[l]ife threatening or permanent incapacitating injury" to a victim. The victim testified that she suffered permanent retina damage as a result of the assault. We conclude that a preponderance of the evidence supported the trial court's finding that she suffered a permanent incapacitating injury.

Regarding OV 7, MCL 777.37(1)(a) authorizes the assessment of 50 points when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." When assessing OV 7, the trial court should consider the elements of the offense, minimum amount of conduct necessary to commit the crime, and the defendant's conduct. *Hardy*, 494 Mich at 443. The trial court may assess 50 points if any conduct occurred beyond whatever "baseline" level thereof would ordinarily be attendant to the offense. *Id*. at 442-443.

An assault with intent to commit murder does not include brutality as an element of the crime. Conduct such as pulling the trigger of a gun that is pointed at a victim, even when no bullets are fired, can constitute assault with intent to commit murder. See *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996). The circumstances in this case were far more brutal. The victim testified that defendant threatened to kill her before repeatedly striking her in the head with a heavy object, a lamp, and a frying pan. Defendant dragged the victim through broken glass, causing lacerations along her legs. The victim's hand was broken and her fingertips crushed from trying to defend herself. There were puddles of blood in the kitchen and blood spatter on the ceiling. We conclude that a preponderance of the evidence supported the trial court's finding that defendant treated the victim with excessive brutality.

However, each of these offense variables involves judicially-found facts that were not elements of defendant's offenses, and the trial court did not depart upward from the sentencing guidelines. "[A]ll defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *People v Lockridge*, 498 Mich 358, 395; 870 NW2d 502 (2015). We conclude that we must remand for a *Crosby* hearing under *Lockridge*. If the trial court determines that it would have imposed the same sentence absent the unconstitutional constraint on its discretion, it may reaffirm its original sentence, but if it determines that it would not have imposed the same sentence, it may resentence defendant. See *Lockridge*, 498 Mich at 399.

## C. CONSECUTIVE SENTENCES

Defendant contends that the trial court improperly ordered consecutive sentences. Before the trial court, defendant objected at sentencing to the imposition of consecutive sentences on the ground that the prosecution did not notify him of its intent to seek consecutive sentencing. On appeal, defendant challenges his consecutive sentences on the different ground that they essentially amount to a life sentence. "[A]n objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). We review this unpreserved issue for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (internal quotation marks and citation omitted). The purpose of consecutive sentences is to deter people "from committing multiple crimes by removing the security of concurrent sentencing." *Id.* at 408. MCL 750.110a(8) provides that "[t]he court may order a term of imprisonment imposed for home invasion in the first degree to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."

The Legislature has subscribed to the principle of proportionality as enshrined in the Michigan and United States constitutions when it fashioned the sentencing guidelines. *People v Babcock*, 469 Mich 247, 262-263; 666 NW2d 231 (2003). This Court presumes that sentences within the guidelines range are proportionate. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). "In determining the proportionality of an individual sentence, this Court is not required to consider the cumulative length of consecutive sentences." *People v St John*, 230 Mich App 644, 649; 585 NW2d 849 (1998). The question is whether the individual sentences are proportionate. *Id*.

In this case, the trial court ordered consecutive sentences because of defendant's history of an escalating pattern of criminal offenses extending back to 1989 and because of the brutality of the instant offense. Even considering the OV 1 error, defendant's sentences fell within the guidelines range. The trial court was within its discretion to order consecutive sentences, and the mere fact that the sentences were lengthy when combined together did not render the sentences disproportionate. We conclude that the trial court did not err by imposing consecutive sentences in this case.

We affirm defendant's convictions, but remand for the trial court to determine whether it would have imposed a materially difference sentence under the sentencing procedure described in *Lockridge*. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Kurtis T. Wilder