PEOPLE v CHEEKS

Docket No. 174619. Submitted March 13, 1996, at Detroit. Decided May 7, 1996, at 9:00 A.M. Leave to appeal sought.

Clinton L. Cheeks was convicted by a jury in the Recorder's Court of Detroit, Warfield Moore, Jr., J., of first-degree premeditated murder, first-degree felony murder, and possession of a firearm during the commission of a felony. Because the defendant was a fifteen-year-old juvenile at the time of the commission of the offenses, the court held a juvenile sentencing hearing, determined that the defendant should be sentenced as an adult, sentenced the defendant to terms of imprisonment of life for the felony-murder conviction and two years for the felony-firearm conviction, and dismissed without prejudice the premeditated murder conviction on double jeopardy grounds. The defendant appealed.

The Court of Appeals *held*:

1. The Court of Appeals reviews a trial court's decision to sentence a minor as an adult by applying a bifurcated standard of review: the court's findings of fact are reviewed for clear error, and the ultimate decision regarding whether the minor should be sentenced as an adult is reviewed for an abuse of discretion. The trial court must conduct a juvenile sentencing hearing at which, after considering the factors set forth in MCL 769.1(3); MSA 28.1072(3), it must determine if the best interests of the defendant and the public would be better served by sentencing the defendant as an adult. The burden of proof is on the prosecutor to prove by a preponderance of the evidence that interests of the juvenile and the public would be served by sentencing the juvenile as an adult.

2. The trial court's findings of fact with respect to the statutory factors were not clearly erroneous. Those findings were supported by the testimony and reports of the witnesses presented at the sentencing hearing.

3. The trial court did not abuse its discretion in resolving the conflict between the best interests of the defendant and the best interests of the public by finding that the interest in public safety should prevail, given the particularly heinous nature of the crime and the uniformity of the opinion expressed by the witnesses at the

sentencing hearing that the defendant should be sentenced as an adult.

4. Because there was not sufficient evidence presented at trial to convict the defendant of either voluntary manslaughter or involuntary manslaughter, the trial court did not err in refusing to charge the jury with respect to those offenses.

5. The record fails to support the claim that the trial court evidenced partiality or engaged in conduct that would have influenced the jury to the detriment of the defendant's case.

Affirmed.

Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Jᴜᴠᴇɴɪʟᴇs — Sᴇɴᴛᴇɴᴄᴇs.

A trial court's decision whether to sentence a minor as a juvenile offender or as an adult offender is subject to a bifurcated standard of review: first, the court's factual findings supporting its determination regarding each of the statutory factors that must be considered are reviewed for clear error, and, second, the ultimate decision is reviewed for an abuse of discretion (MCL 769.1[3]; MSA 28.1072[3]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Olga Agnello*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *P. E. Bennett*), for the defendant on appeal.

Before: Mᴜʀᴘʜʏ, P.J.., and Gʀɪꜰꜰɪɴ and E. R. Posᴛ,* JJ.

Mᴜʀᴘʜʏ, P.J. A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a); MSA 28.548(1)(a), first-degree felony-murder, MCL 750.316(1)(b); MSA 28.548(1)(b), and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). At the time of the offense,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant was fifteen years old.[1] After the jury convicted defendant, the trial court held a juvenile sentencing hearing as required by MCL 769.1(3); MSA 28.1072(3) and MCR 6.931(A) to determine whether to sentence defendant as a juvenile or as an adult. The trial court determined that defendant should be sentenced as an adult and sentenced him to imprisonment for life for the first-degree felony-murder conviction and for two years for the felony-firearm conviction. The trial court dismissed without prejudice defendant's first-degree premeditated murder conviction on double jeopardy grounds. Defendant appeals as of right. We affirm.

On September 26, 1993, at approximately 11:30 A.M., defendant and his sister arrived at the residence of David Pasley, the victim, at the same time the victim's brother, Charles Pasley, and Charles' friend, Greg Jordon, and the victim's four-year-old daughter were leaving the house to go to a McDonald's restaurant. When they returned to the residence about twenty minutes later, Charles and Jordon heard gunshots and discovered the victim lying on the floor on a landing between the first and second floors. The victim had sustained multiple gunshot wounds and was dead.

Dr. Laning Davidson, an assistant medical examiner for the Wayne County Medical Examiner's Office who performed the autopsy of the victim, testified that the victim died as a result of multiple gunshot wounds. In total, the victim sustained eleven gunshot wounds. The victim sustained one gunshot wound to the right leg and one below the right eye. The remaining nine

---

[1] The Detroit Recorder's Court acquired jurisdiction over defendant pursuant to the automatic waiver provisions of MCL 764.1f; MSA 28.860(6) and MCL 725.10a(1)(c); MSA 27.3950(1)(1)(c).

wounds were sustained to the chest and upper abdominal area. All of the wounds contained exit wounds on the back of the body, and Dr. Davidson did not recover any bullets or bullet fragments from the victim's body. According to Dr. Davidson, the wounds to the victim's leg and face were not inflicted at close range. However, five of the nine wounds to the chest and upper abdominal area were inflicted at close range. After viewing photographs of the victim on the landing, Dr. Davidson testified that, on the basis of the blood spatters, the victim was already lying down when he was shot in the chest.

Defendant did not testify. However, Officer Charles Hines of the Inkster Police Department testified that he had a conversation with defendant about the incident and that defendant admitted that he shot the victim, but claimed that the shooting was accidental. According to Officer Hines, defendant stated that he accidentally pulled the trigger and the gun continued to discharge. During the conversation, defendant admitted that he removed a gold chain with a medallion from the victim's neck after shooting him. Officer Hines read into the record a statement written by defendant and bearing his signature. In the statement, defendant wrote that when the victim and his sister went upstairs, he retrieved a gun and was looking at it when he touched the trigger and the gun discharged. Defendant then went upstairs, intending to scare the victim, but not kill him. Defendant shot the gun upward, and the victim jumped at him. Defendant became scared, and the gun went off. According to the statement, the victim grabbed defendant's leg while the defendant's finger was on the trigger, and the gun continued to discharge. Defendant and his

sister took the gun to a friend's house and put it in a dog house. When defendant returned to the friend's house to retrieve the gun, it was gone. Defendant's written statement was silent regarding whether defendant removed the gold chain and medallion from the victim's neck after the shooting.

Defendant argues that the trial court abused its discretion in sentencing him as an adult. In reviewing a trial court's decision to sentence a minor as a juvenile or as an adult, this Court applies a bifurcated standard of review. *People v Lyons (On Remand)*, 203 Mich App 465, 467-468; 513 NW2d 170 (1994). We review the trial court's findings of fact under the clearly erroneous standard and the ultimate decision to sentence the minor as a juvenile or as an adult for an abuse of discretion. *Id.*, 468.

MCL 769.1(3); MSA 28.1072(3) and MCR 6.931(A) require a trial court to conduct a juvenile sentencing hearing to determine if the best interests of the defendant and the public would be served better by sentencing the juvenile as an adult. The trial court must consider the following factors in making this determination:

> (a) The prior record and character of the juvenile, his or her physical and mental maturity, and his or her pattern of living.
>
> (b) The seriousness and the circumstances of the offense.
>
> (c) Whether the offense is part of a repetitive pattern of offenses which would lead to 1 of the following determinations:
>
> (i) The juvenile is not amenable to treatment.
>
> (ii) That despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to disrupt the rehabilitation of other juveniles in the treatment program.

(d) Whether, despite the juvenile's potential for treatment, the nature of the juvenile's delinquent behavior is likely to render the juvenile dangerous to the public if released at the age of 21.

(e) Whether the juvenile is more likely to be rehabilitated by the services and facilities available in adult programs and procedures than in juvenile programs and procedures.

(f) What is in the best interests of the public welfare and the protection of the public security. [MCL 769.1(3); MSA 28.1072(3). See MCR 6.931(E)(3)(a)-(f)].

The prosecutor has the burden of proving by a preponderance of the evidence that the best interests of the juvenile and the public would be served by sentencing the juvenile as an adult offender. MCR 6.931(E)(2).

At the conclusion of the juvenile sentencing hearing, the trial court made findings of fact on the record as required by MCL 769.1(5); MSA 28.1072(5) and MCR 6.931(E)(4). Regarding the first factor, the trial court found that while defendant did not have a significant prior record, the situation was "repetitive" in that defendant had a fascination with guns and had been involved with guns in the past. As far as defendant's character, the trial court noted that defendant was emotionless and arrogant during the trial. The trial court characterized defendant as mean and vicious. Finally, the trial court described defendant's pattern of living as "something fierce" and noted that defendant lived his life with little, if any, regard for the rights of others.

Regarding the seriousness and the circumstances of the offense, the trial court stated the following:

I mean, there is little doubt in my mind that this is one, this particular murder, one of the more heinous ones that

you come into. It's not often that we have people that are shot nine or eleven different times and the evidence suggesting that most of those bullets were pumped into a body or placed or shot in the body of the deceased while he was totally disabled. I mean, he was on the floor. Bullets went though his body, through the floor . . . .

\*     \*     \*

. . . I am focusing quite a bit on the kind of crime that was committed. Not just that it was murder, but how it was done and under the circumstances it was done, and the arrogance that was demonstrated by — and the finality of it. He was out to kill this man.

The next factor that the trial court addressed was whether the offense was part of a pattern of offenses leading to a determination that defendant would not be amenable to treatment or that despite defendant's potential for treatment, the nature of defendant's behavior was likely to disrupt the rehabilitation of other juveniles in the treatment program. The trial court found that defendant would be a threat to other juveniles because of his size and his "machoism." The trial court further stated that it believed that if defendant was sentenced as a juvenile, he would consider his crime to be a badge of honor and would focus on how "bad" he is.

With regard to the related factor concerning whether the nature of defendant's behavior was likely to render him dangerous to the public if released at the age of twenty-one despite his potential for treatment, the trial court stated:

And if he is released back to society, given this offense, I certainly wouldn't want him released to a society that was close to me. Because I think he is a danger. I think he will remain a danger. I don't think four or five years of any kind

of treatment that he could possibly receive, unless he was in treatment twenty-four hours a day for the next five years, seven days a week, 365 ays [sic] a year would possibly even help him. And even that may not help him.

\* \* \*

If he goes to juvenile court, juvenile authority, I think he will bide his time until he is released. And when he is released, he would be the same person he is or was the day he shot and killed the deceased in this matter.

As far as whether defendant would be most likely to be rehabilitated in adult or juvenile programs, the trial court found that defendant's potential for successful treatment would be equal in either place.

Regarding the best interests of the public welfare and the protection of the public security, the trial court stated the following:

I believe the viciousness of the crime, I believe that the release of him in four or five years would not serve the interests of the public. And I think he is a threat to the public if he is released any time soon. Under no circumstances would I agree that he should be released within the next fifteen years. I think he needs at least that. Under no circumstances, personally, do I think that this young man ought to see this side of the prison for less time than that.

Defendant argues that the trial court's findings of fact were clearly erroneous and that the trial court's decision to sentence defendant as an adult was an abuse of discretion. We disagree. At the juvenile sentencing hearing, Mark Reddick of the Department of Social Services, Michael Ferrara, a senior clinical psychologist with the Detroit Recorder's Court psychiatric clinic, and Thomas Zahon, a Wayne County probation officer, all testified and submitted reports to the

trial court. The trial court's findings of fact are supported by the testimony and reports of these three witnesses. Accordingly, we reject defendant's contention that the trial court's findings of fact were clearly erroneous.

We also reject defendant's argument that the trial court's ultimate decision to sentence defendant as an adult was an abuse of discretion. Although the seriousness and the circumstances of an offense is a factor that the trial court must consider in determining whether to sentence a minor as a juvenile or as an adult, MCL 769.1(3)(b); MSA 28.1072(3)(b), it is not the only factor that the trial court must consider. If it were, all juveniles who commit violent crimes would be automatically sentenced as adults. This is clearly not the legislative directive. Under the scheme established by the Legislature, the trial court must consider whether "the best interests of the juvenile and the public would be served by" sentencing the juvenile as an adult. MCL 769.1(3); MSA 28.1072(3). Often, as in this case, there is a tension between those two interests because the interests of the juvenile defendant and the public may conflict. MCL 769.1(3); MSA 28.1072(3) does not explicitly state how the trial court should resolve such a conflict. In the absence of a clear legislative directive in MCL 769.1(3); MSA 29.1072(3) regarding how to resolve such a conflict, we believe that the trial court's function is to resolve the conflict by considering and balancing the factors listed in MCL 769.1(3)(a)-(f); MSA 28.1072(3)(a)-(f). In doing so, the trial court must remember that, although the statute does not explicitly so state, the ultimate goal of sentencing is to protect society through just and certain punishment reasonably cal-

culated to rehabilitate. *People v Schultz*, 435 Mich 517, 532; 460 NW2d 505 (1990). The public must be protected from dangerous individuals who commit heinous and violent crimes, regardless of whether the individual is a juvenile or an adult.

After carefully reviewing the record, we conclude that the trial court did not abuse its discretion in resolving the conflict between the best interests of the defendant and the best interests of the public in favor of public safety because the prosecution sustained its burden of proof as stated in MCR 6.931(E)(2). Defendant's crime was particularly heinous, and all three of the witnesses at the juvenile sentencing hearing recommended that defendant be sentenced as an adult. Because the record supports the conclusion that, on balance, the best interests of the juvenile and the public would be better served by sentencing defendant as an adult, we cannot say that the trial court's decision to sentence defendant as an adult was an abuse of discretion.

Defendant also argues that the trial court erred in refusing to instruct the jury on the lesser included offenses of voluntary and involuntary manslaughter. Both voluntary and involuntary manslaughter are cognate lesser included offenses of murder. *People v Pouncey*, 437 Mich 382, 388; 471 NW2d 346 (1991); *People v Heflin*, 434 Mich 482, 497; 456 NW2d 10 (1990). The trial court is required to give an instruction for a cognate lesser included offense if: (1) the principal offense and the lesser offense are of the same class or category, and (2) the evidence adduced at trial would support a conviction of the lesser offense. *People v Hendricks*, 446 Mich 435, 444; 521 NW2d 546 (1994). There must be more than a modi-

cum of evidence; there must be sufficient evidence that the defendant could be convicted of the lesser offense. *Pouncey, supra,* 387. Defendant did not call any witnesses or present any evidence. After reviewing the existing record, we conclude that there is not sufficient evidence to convict defendant of either voluntary or involuntary manslaughter. Accordingly, the trial court did not err in refusing to give the requested instructions.

Defendant finally argues that the trial court deprived him of his rights to due process and a fair trial by making improper comments to defense counsel and by improperly interrupting and interfering with defense counsel's cross-examination of witnesses with interjections and questions. A defendant in a criminal trial is entitled to expect a "neutral and detached magistrate." *People v Moore,* 161 Mich App 615, 619; 411 NW2d 797 (1987). While a trial court may question witnesses to clarify testimony or elicit additional relevant information, the trial court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial. *People v Conyers,* 194 Mich App 395, 404-405; 487 NW2d 787 (1992). The test is whether the judge's questions and comments may have unjustifiably aroused suspicion in the mind of the jury concerning a witness' credibility and whether partiality quite possibly could have influenced the jury to the detriment of the defendant's case. *Id.,* 405. After carefully reviewing the trial court's allegedly improper comments and questions, we find that the trial court's conduct was not partial and could not have influenced the jury to the detriment of defendant's case. Accordingly, we conclude that the trial

court did not engage in judicial misconduct in this case and that defendant was not deprived of due process and a fair trial.

Affirmed.