# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RONNIE LEE KIRBY, JR.,

        Defendant-Appellant.

UNPUBLISHED
January 17, 2017

No. 327189
Ingham Circuit Court
LC No. 14-000272-FC

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

Defendant, Ronnie Lee Kirby, Jr., appeals as of right his convictions, following a jury trial, of felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Kirby to serve 13 to 48 months' imprisonment for his felonious assault conviction and a consecutive term of two years' imprisonment for his felony-firearm conviction. We affirm.

## I. FACTUAL BACKGROUND

According to Benjamin Gebert, he was attempting to repossess a Toyota Corolla that belonged to Kirby's girlfriend, Autumn Smith-Asher. Gebert had located the vehicle and hooked it up to his tow truck when Kirby jumped on the hood of Gebert's truck. After an argument, Kirby went to the Corolla, removed a black case from it, pulled an assault rifle out of the case, and pointed it at Gebert. Kirby demanded that Gebert release the Corolla. After Gebert complied, Kirby drove the Corolla away from the dealership. According to Kirby and Smith-Asher, the assault rifle merely fell out of its case as Kirby was retrieving it from the Corolla and he did not point it at Gebert or threaten Gebert with it.

## II. GREAT WEIGHT OF THE EVIDENCE

Kirby first argues that the trial court abused its discretion by denying his motion for a new trial on the basis that his conviction was against the great weight of the evidence because Gebert's testimony was so incredible that the jury should not have believed it. We disagree.

We review for an abuse of discretion the trial court's denial of a motion for new trial. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "A trial court abuses its

-1-

discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

The prosecution has the constitutionally based burden to prove each element of an offense beyond a reasonable doubt. *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). We review a defendant's claim that the jury's verdict was against the great weight of the evidence to determine whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998).

The presence of conflicting testimony alone does not provide a sufficient ground to discard a verdict as against the great weight of the evidence. *Id*. at 647. We must defer to the trier of fact's determination of credibility "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the [trier of fact] could not believe it, or contradicted indisputable physical facts or defied physical realities . . . ." *Id*. at 643-644.

In this case, the only people who saw the entire confrontation were Gebert, Kirby, and Smith-Asher. Kirby and Smith-Asher testified that Kirby did not threaten Gebert with the gun, while Gebert testified that Kirby pointed it at him. This conflicting testimony was well within the ability of the jury to resolve. Kirby additionally contends that Gebert gave inconsistent accounts of how Kirby handled the gun. In his first 911 call, Gebert merely stated that Kirby pointed the gun at him and told him to release the car. At preliminary examination, Gebert testified that Kirby pointed the gun at the door of Gebert's truck. During trial, Gebert testified that Kirby pointed his gun at the truck's window. However, Gebert later explained that the window was part of the truck's door.

We conclude that Gebert's testimony was not directly contradictory, nor was it so far impeached that it was deprived of all probative value. Additionally, the jury had access to the remainder of the information Kirby claims impeached Gebert, including that Gebert had strong motives to properly repossess Smith-Asher's Corolla, and it reasonably chose to believe him. We conclude that the trial court did not abuse its discretion when it denied Kirby's motion for a new trial.

## III. SUFFICIENCY OF THE EVIDENCE

Kirby next argues that insufficient evidence supported his conviction of felonious assault for the same reason—that he did not point the gun at Gebert. We review de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). When doing so, this Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Because the jury could have reasonably chosen to believe Gebert's testimony, we reject this argument.

## IV. RELEVANCE OF REPOSSESSION PROCEDURES

Kirby contends that the trial court erred by ruling that questions regarding the legality of the repossession were irrelevant. We disagree.

We review for an abuse of discretion the trial court's rulings on evidentiary issues. *People v Layher*, 464 Mich 756, 761; 631 NW2d 281 (2001). The trial court may only admit relevant evidence. MRE 402. Relevant evidence is evidence that has any tendency to make a fact of consequence more or less probable. MRE 401. A fact is material if it is within the range of litigated matters in controversy. *People v Eliason*, 300 Mich App 293, 301; 833 NW2d 357 (2013). A fact is not material if it does not help to prove a proposition that is at issue. *Id*.

In this case, the trial court ruled that the legality of the repossession was irrelevant since Kirby did not have standing to challenge the repossession of a vehicle that did not belong to him. Additionally, that the repossession was legal had no bearing on whether Kirby committed a felonious assault by threatening Gebert with a gun, which was the center fact at issue in the case—unlawful repossession is not a defense to a felonious assault. We conclude that the trial court did not abuse its discretion by ruling that the legality of the repossession was irrelevant and precluding counsel from questioning the witnesses regarding it.

## V. JUDICIAL IMPARTIALITY

Kirby next contends that the trial court's partial conduct when engaging in judicial questioning denied him a fair trial. We disagree.

Generally, this Court reviews de novo whether a judge's conduct denied the defendant a fair trial. *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, Kirby failed to preserve this issue by challenging it below, and we review unpreserved errors for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and the error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings. *Id*.

A trial judge may question witnesses. MRE 614(b). However, a defendant is entitled to a neutral and detached magistrate. *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996). The trial judge should take care to ensure that his or her questions "are not intimidating, argumentative, prejudicial, unfair, or partial." *Id*. (internal quotation marks and citation omitted). A judge's conduct pierces the veil of judicial impartiality "when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 171.

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including (1) the nature of the judicial conduct, (2) the tone and demeanor of the trial judge, (3) the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, (4) the extent to which the judge's conduct was directed at one side more than the other, and (5) the presence of any curative instructions. [*Id*. at 172.]

Kirby contends that the trial court engaged in improper judicial questioning during the following exchange:

> *The Court*: Sir, let me ask you a question. Is it your position in this case that he needed to have a court order in order to repo this car and had to have it in writing and not on the computer screen?

-3-

*Defendant*: Yes.

*The Court*: If I were to tell you that I'm the one that tells you what the law is in this state, and that repo companies have a valid right to repo a car without any court order so long as it's contained within the normal dealer paperwork, are you aware—I said that earlier, are you aware that this man had a valid order? *Are you seriously sitting here telling me that that's not right*?

*Defendant*: The training I had, we had to carry a paper copy around, they gave us a copy of the order of repossession.

*The Court*: I'm asking you, you said a court order, that means going to court—

*Defendant*: No, just—

*The Court*: —Showing the court.

*Defendant*: No, just an order of repossession. It's a simple paper that states this car is up for repossession.

*The Court*: It's a declaration of repossession.

*Defendant*: Correct.

*The Court*: In this case, he had one. It was on a computer and not on a handwritten paper.

*Defendant*: Then why wasn't it presented?

*The Court*: I'm only telling you, sir, there was one.

*Defendant*: Okay. I was unaware of that.

*The Court*: *I understand that's your story today*. Any other questions? (Emphasis added).

The central objective of judicial questioning is to provide clarity by producing testimony that is more exact or by eliciting additional relevant information. *Stevens*, 498 Mich at 173. However, it is not appropriate for the judge "to exhibit disbelief of a witness, intentionally or unintentionally." *Id*. at 174. In the exchange in this case, the judge twice indicated skepticism and disbelief at Kirby's responses to the questions. Additionally, regarding tone, "the very nature of the words used by the judge can exhibit hostility, bias, or incredulity." *Id*. at 176. The court's decision to ask if Kirby was "seriously" advancing a proposition and the judge's

-4-

reference to Kirby's position as a "story"[1] are word choices that indicate hostility, bias, or incredulity. These factors both weigh in favor of a conclusion that the judge indicated improper bias.

However, the remainder of the factors do not weigh in favor of such a conclusion. The trial was relatively short and concerned non-complex legal issues. The questioning was in response to Kirby's decision to raise an issue the trial court had previously ruled irrelevant.[2] The judge's questioning was brief and concerned a matter that was not pertinent to any elements of the charged crimes. Additionally, the trial court gave curative instructions that the jury should disregard the judge's personal opinions if it believed that he harbored them. "[A] curative instruction will often ensure a fair trial despite minor or brief inappropriate conduct." *Stevens*, 498 Mich at 177.

Considering the totality of the circumstances, we conclude that it was not reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of partiality against a party. Kirby has thus failed to demonstrate that a plain error in judicial conduct affected his substantial rights.

To the extent that Kirby's brief makes additional contentions that he neither raised in his statement of questions presented nor fully briefed on the merits, we conclude that he has abandoned those issues. See MCR 7.212(C)(5); *People v Albers*, 258 Mich App 578, 584; 672 NW2d 336 (2003); *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).

We affirm.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray

---

[1] The word "story" can mean "an account of incidents or events," but it can also mean a "lie, falsehood." *Merriam-Webster's Collegiate Dictionary* (2014). At a minimum, the ambiguous nature of the statement could have caused some jurors to conclude that the judge was expressing incredulity at Gebert's account.

[2] During cross-examination, Kirby attempted to insert the legality of the repossession into the trial, despite that the trial court had ruled that issue irrelevant, through a non-responsive answer to a question asked by the prosecutor:

> *Q.* In fact, when you realized that the car was going to be repossessed, you didn't turn the keys over to Mr. Gebert at all?
>
> *A.* He had no repossession order, why would I? . . .
>
> *Q.* Sir, you never turned the keys over, did you?
>
> *A.* No, I did not.