*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRAD STEPHEN HAYNIE,

Defendant-Appellant.

FOR PUBLICATION
April 16, 2019
9:15 a.m.

No. 340377
Macomb Circuit Court
LC No. 2016-000712-FC

Before: JANSEN, P.J., and METER and GLEICHER, JJ.

JANSEN, P.J.

Defendant appeals as of right his jury trial conviction of guilty but mentally ill of assault with intent to do great bodily harm less than murder ("AWIGBH"), MCL 750.84. Defendant was sentenced to 67 to 120 months' imprisonment. We affirm.

## I. RELEVANT FACTUAL BACKGROUND

This case arises out of defendant's assault of his mother, Patricia Haynie, in his condominium. Patricia sat on the couch while defendant cooked dinner. The two joked and teased each other while defendant cooked. A short time later, defendant walked to the kitchen counter and put down the knife that he had been using. Defendant looked at Patricia with a terrified look on his face and said, "[M]om, I've got to save you, Lucifer has you, your eyes are big black coals." Defendant rushed toward Patricia and snatched the cane out of her hands that she used to try to keep defendant away. Defendant told Patricia that he "was going to have to twist [her] arms into knots and lift [her] up and shake [her] until he got Lucifer to let go of [her] and [her] eyes came back to normal," and he did just that. Defendant let go of Patricia, who called 911 before defendant grabbed her again. Patricia bit defendant, who then punched her.

Defendant was arrested and charged with assault with intent to murder, MCL 750.83. At trial, defendant argued that the trial court should give jury instructions for the lesser included offenses of AWIGBH, aggravated assault, and assault and battery. The prosecution agreed that an instruction for AWIGBH was proper, but argued that the trial court should not give instructions for aggravated assault or assault and battery. The trial court agreed with the

prosecution. As stated above, the jury found defendant guilty but mentally ill of the lesser included offense of AWIGBH.

## II. JURY INSTRUCTIONS

Defendant first argues that the trial court erred by refusing to give a jury instruction for the lesser included offense of assault and battery. We disagree.

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

"A defendant has the right to have a properly instructed jury consider the evidence against him or her, and it is the trial court's role to clearly present the case to the jury and to instruct it on the applicable law." *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014) (quotation marks and citation omitted). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). "[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002), overruled in part on other grounds by *People v Mendoza*, 468 Mich 527 (2003). "Necessarily included lesser offenses are offenses in which the elements of the lesser offenses are completely subsumed in the greater offense." *People v Nickens*, 470 Mich 622, 626; 685 NW2d 657 (2007), quoting *Mendoza*, 468 Mich at 532 n 3. See also *People v Nyx*, 479 Mich 112, 121; 734 NW2d 548 (2007) ("[A]n offense is only inferior when all the elements of the lesser offense are included within the greater offense.") Comparatively, "MCL 768.32(1) does not permit cognate lesser instructions." *Cornell*, 466 Mich at 357.

Moreover, "[a]n inferior-offense instruction is appropriate only when a rational view of the evidence supports a conviction for the lesser offense." *Cornell*, 466 at 545. A trial court's failure to give a lesser included offense instruction is harmless error if "the evidence did not clearly support a conviction for the lesser included [offense]." *Id*. at 365-366. There must be "more than a modicum" of evidence to show that defendant could have been convicted of the lesser-included offense. *People v Cheeks*, 216 Mich App 470, 479-480; 549 NW2d 584 (1996).

This Court has previously determined that assault and battery is not a necessarily included lesser offense of assault with intent to murder. *People v Ross*, 73 Mich App 588, 592; 252 NW2d 526 (1977). Because *Ross* was decided by this Court prior to November 1, 1990, it is not binding authority. MCR 7.215(J)(1). We now reaffirm *Ross* to the extent that it concludes assault and battery is not a necessarily included lesser offense of assault with intent to murder. Rather, we conclude that misdemeanor assault and battery is a cognate lesser offense of assault with intent to commit murder because all of the elements of misdemeanor assault and battery are

not included within the greater offense of assault with intent to murder.[1]  Indeed, "[t]he elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (quotation marks and citation omitted).  Comparatively, assault is "either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v Starks*, 473 Mich 227, 234; 701 NW2d 136 (2005).  Battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (quotation marks and citation omitted).  In short, assault and battery contains an element that assault with intent to murder does not, i.e., a harmful or offensive touching.  Therefore, the trial court's determination to not give a lesser offense instruction for assault and battery was proper.

Moreover, even if we were to conclude that assault and battery was a lesser-included offense, we disagree with the dissent that the facts of this case would support such an instruction. As noted *supra*, a rational view of the evidence must support an instruction on a necessarily included lesser offense.  The evidence must be "more than a modicum" to show that defendant could have been convicted of assault and battery. *Cheeks*, 216 Mich App at 479-480.  Our review of the evidence in this case simply does not reflect the commission of a misdemeanor assault and battery occurred.  As noted by the dissent, defendant's intent is central to this determination.  Defendant's intent can be inferred from "the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001) (citation omitted).  The victim's injuries are also relevant. *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2003), reversed on other grounds 500 Mich 14 (2017).

At trial, Patricia testified that defendant told her that he was "going to have to twist [her] arms into knots and lift [her] up and shake [her] until he got Lucifer to let go of [her] and [her] eyes came back to normal."  Defendant then did take her hands, lift her off the couch, and shake her twice.  After the second shake, defendant punched Patricia and knocked her unconscious. When Deputy Brandon Cleland arrived at defendant's condominium, he saw that Patricia's face was covered in blood, and he believed that she dragged herself to the door.  Patricia's head wound required 16 or 17 staples to close.  Detective Anthony Stone, an evidence technician, took pictures of the scene of the assault after defendant was arrested.  Detective Stone photographed a metal bar that had wood on it, with horseshoes on either end of the bar, by the couch where Patricia was assaulted.  The wood on the bar was cracked, and there was a blood stain on the

---

[1] Contrary to the dissent's assertion, we do not seek to contravene our Supreme Court's opinions in *People v Hanna*, 19 Mich 316 (1869), *People v Prague*, 72 Mich 178, 180; 40 NW2d 243 (1988), and *Cornell*, 466 Mich 335.  We take no issue with our Supreme Court's holdings that a defendant is entitled to request that the jury be instructed on all necessarily lesser-included offenses so long as "all the elements of the lesser offense are included within the greater offense[,]" *Nyx*, 479 Mich at 120, citing *Mendoza*, 468 Mich at 553, and "a rational view of the evidence would support it." *Cornell*, 466 Mich at 357.  However, we do take issue with the dissent relying merely on the syllabus of *Hanna*, which is now 150 years old and factually dissimilar, to suggest that the majority disagrees with established Michigan jurisprudence.

cracked portion of the bar. There were also bloodstains on the couch. Because of the brutality of the assault, no rational view of the evidence could support a finding of a simple assault and battery.[2]

Based on the foregoing, we conclude that the trial court did not err by refusing to give an instruction for assault and battery.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was sufficient evidence to prove his insanity defense. We disagree.

Defendant does not challenge the sufficiency of the evidence regarding the elements of his AWIGBH conviction, rather he challenges that there was sufficient evidence to prove his insanity defense. This Court treats such an argument as a sufficiency of the evidence issue. See *People v McRunels*, 237 Mich App 168, 181-182; 603 NW2d 95 (1999). "A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014).

"In the criminal law, a person is presumed to be sane." *People v Walker*, 142 Mich App 523, 525; 370 NW2d 394 (1985). "It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense." MCL 768.21a(1). "The defendant has the burden of proving the defense of insanity by a preponderance of the evidence." MCL 768.21a(3). The prosecution must prove every element of the crime beyond a reasonable doubt, but the prosecution is not required to rebut an affirmative defense. *People v Mette*, 243 Mich App 318, 330; 621 NW2d 713 (2000).

Legal insanity requires "proof that, as a result of mental illness or being mentally retarded as defined in the mental health code, the defendant lacked 'substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law.' " *People v Carpenter*, 464 Mich 223, 230-231; 627 NW2d 276 (2001), quoting MCL 768.21a(1). A mental illness is "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). "[I]f a defendant

---

[2] The dissent takes issue with our conclusion that "no rational view of the evidence could support a finding of simple assault and battery." However, the dissent's rationale in concluding that defendant's request for an assault and battery instruction should have been granted because a "rational view of the evidence supported it" relies solely on Patricia's belief that her son did not intend to kill or grievously wound her when he attacked her. However, Patricia's belief regarding her son's intent is irrelevant, and is contrary to her own testimony that defendant *intended* to twist her arms and shake her until "Lucifer to let go of [her.]" See *Hawkins*, 245 Mich App at 458; *Dillard*, 303 Mich App at 378.

produces sufficient evidence of the elements of the defense, then the question whether the defendant has asserted a valid defense is for the jury to decide." *People v Kolanek*, 491 Mich 382, 411-412; 817 NW2d 528 (2012).

At trial, defendant presented Dr. Iren Assar, Dr. Emily Escott, and Dr. Michael Abramsky as expert witnesses. Dr. Assar testified that she determined defendant had a mental illness, based upon a review of his medical records and Patricia's account of the assault. Dr. Assar reviewed defendant's medical records that reported his history of bipolar disorder and schizophrenia. Defendant's medical records also contained reports of his delusions: defendant's neighbor, Fred Yaks was trying to kick defendant out of his condominium; Yaks was burying dead bodies, and a masonic order was interfering in defendant's life. Dr. Assar also talked with defendant about the day of the assault. Defendant told Dr. Assar that he began drinking alcohol in the basement to stop the voices in his head. When defendant came out of the basement, he saw Yaks on the porch and he saw Patricia in a chair, rocking back and forth while chanting. However, defendant reported that he did not have any memory of the assault, and he believed that Yaks assaulted Patricia. Dr. Assar also believed that defendant lacked the capacity to appreciate the nature and consequences of actions, based on his statements during the assault. Defendant's statements during the assault, that he needed to get Lucifer out of Patricia and that she was not his mother, indicated that defendant was "operating from his delusions," that he "was not in contact with reality," and that he believed what he did was necessary because of the delusions.

Dr. Escott testified that she gave defendant a neuropsychological evaluation, and based on the scores from the evaluation, she believed he had damages to the left temporal brain lobe and part of the frontal brain lobe. Dr. Escott further testified that people with damage to the left temporal lobe often suffer from hallucinations and delusional thoughts, and damage to the frontal lobe is associated with difficulty with executive functions, planning, and decision making. Additionally, it was likely that defendant had this brain damage on the day of the assault, and the brain damage could have contributed to his behavior.

Dr. Abramsky testified that, in his opinion, defendant was legally insane at the time of the assault based on his history of mental illness and his statements during the assault. Dr. Abramsky also testified that even if defendant drank alcohol the day of the assault, although alcohol likely contributed to the assault, the assault was not the product of the alcohol because defendant had delusions and "bizarre behaviors" while he was sober. Dr. Abramsky further testified that he believed defendant did not know the difference between right and wrong at the time of the assault because he did not know what was real and what was not real.

The prosecution called into question the reliability of the experts' opinions by highlighting a result of Dr. Escott's evaluation, where she reported that part of defendant's personality was that he "likes to manipulate others for his own gratification." The prosecution used Dr. Escott's finding to try to undermine the reliability of the experts' opinions by questioning whether defendant could simply be lying to them during the evaluations. The prosecution also tried to highlight that the experts' testimony regarding defendant's state of mind was only their opinions and not a provable fact.

While defendant presented three experts whose testimony supported the conclusion that defendant was legally insane at the time of the assault, the prosecution impeached the witnesses by calling into question the reliability of their assessments through the possibility that defendant lied to the doctors. It is the role of the jury, not this Court, to weigh the evidence and the credibility of witnesses. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). There was also evidence that defendant was not legally insane because Patricia testified that defendant acted normal prior to the assault. While defendant cooked dinner, he got food from the freezer, defrosted the food, retrieved spices from the cabinets, and had several pans cooking on the stove. Deputy Cleland also testified that after the assault, defendant cooperated with Deputy Cleland by following the commands to come out of the basement, turn around, get on his knees, and place his hands behind his back. Dr. Assar also testified that defendant reported that he was drinking the day of the assault, which was supported by the three bottles of alcohol in the condominium.

The trial court also instructed the jury that it was free to believe or disbelieve the opinions of the experts:

> Experts are allowed to give opinions in court about matters they are experts on. However, you do not have to believe an expert's opinion, instead, you should decide whether you believe it and how important you think that is. When you decide whether you believe an expert's opinion, think carefully about the reasons and facts he or she gave her for her opinion, or his opinion, and whether those facts are true.

Jurors are presumed to follow their instructions. *People v Stevens*, 498 Mich 162, 177; 869 NW2d 233 (2015). The verdict shows that the jury followed the trial court's instruction and did not believe the experts' opinions that defendant was legally insane at the time of the assault. Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the jury's determination that defendant was not legally insane at the time of the assault.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter