*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CHARLES KUNTA LEWIS, JR., Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

        Petitioner-Appellee,

v

CHARLES KUNTA LEWIS, JR.,

        Respondent-Appellant.

UNPUBLISHED
July 9, 2019

No. 337716
Ingham Circuit Court
Family Division
LC No. 10-000001-DJ

---

Before: TUKEL, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Charles Kunta Lewis, Jr., appeals as of right the February 15, 2017 sentences imposed for his convictions by a jury in 2012 of first-degree felony murder, MCL 750.316(1)(b); first-degree home invasion, MCL 750.110a(2); conspiracy to commit first-degree home invasion, MCL 750.110a(2) and MCL 750.157a(a); assault with intent to rob while armed, MCL 750.89; conspiracy to commit assault with intent to rob while armed, MCL 750.89 and MCL 750.157a(a); and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. For the reasons provided below, we affirm.

The convictions arose from the assault and killing of Shayla Johnson in Lansing in 2010. At trial, the prosecution presented testimony that (1) Lewis had joined a Lansing gang called the Block Burners in July 2010; (2) on July 23, 2010, the gang formulated a plan to commit an armed robbery and kidnapping against Johnson and her boyfriend; (3) members of the gang gathered several guns; (4) Lewis, who had a gun, and others proceeded into Johnson's home; (5) one of the assailants hit Johnson with a gun and she started bleeding profusely; (6) the assailants,

including Lewis's father,[1] carried Johnson to a car trunk; (7) Johnson maneuvered her leg to keep the trunk from closing; and (8) Lewis's father shot and killed Johnson. Evidence showed that Lewis specifically asked for a gun before the crime, that he was part of the group that surrounded Johnson's bed before the assault and killing, and that he had intimidated one of the adult members of the group of assailants.

Lewis was a minor, just shy of turning 14, at the time of the crimes but was tried and convicted as an adult. In April 2012, the court initially imposed a delayed sentence and probation, as allowed for juveniles by MCL 712A.18(1)(m). In February 2017, the court revoked the juvenile sentence and, in accordance with MCL 769.25(9), sentenced Lewis to 25 to 60 years' imprisonment for murder. The court also sentenced Lewis to a consecutive term of two years' imprisonment for felony-firearm and to four terms of 10 to 20 years' imprisonment for the remaining four convictions.

Although a sentence of life without the possibility of parole for Lewis's murder conviction under MCL 769.25 was a possibility at the initial sentencing, the prosecutor did not seek such a sentence and instead argued for a delayed sentence under MCL 712A.18(1)(m), whereby the court could exercise jurisdiction over Lewis until he reached the age of 21. See MCR 3.945(B)(1) and MCL 712A.18i(4); see also, generally, *In re Juvenile Commitment Costs*, 240 Mich App 420, 431-433; 613 NW2d 348 (2000). By imposing a delayed sentence, the court could, during or toward the end of the juvenile probationary period, sentence Lewis as an adult if such a sentence was warranted. MCL 712A.18i. As noted, the court did impose a delayed sentence, and for multiple years Lewis performed exceptionally well at his juvenile-justice facilities. However, in April 2016 he was transferred from a "lockdown" facility to the Martin Luther King House (MLK House), where he was given the freedom to interact with the outside community. He violated various rules of this facility, and in September 2016, he absconded from the facility and was apprehended by police approximately 10 days later. Evidence showed that he was involved in the theft of a vehicle in Grand Ledge and that he fled from the police when they stopped this stolen vehicle. As a result, the court imposed an adult sentence. MCL 769.25(9) mandates that a minimum sentence of 25 years applies when (1) a juvenile convicted of first-degree murder is being sentenced as an adult and (2) a sentence of life imprisonment without the possibility of parole is not imposed. The principal argument on appeal is that this 25-year mandatory minimum sentence is unconstitutional.

## I. IMPOSITION OF AN ADULT SENTENCE

Lewis first argues that the trial court, at the second sentencing in February 2017, should not have imposed an adult sentence. "In reviewing a trial court's decision to sentence a minor as a juvenile or as an adult, this Court applies a bifurcated standard of review." *People v Cheeks*, 216 Mich App 470, 474; 549 NW2d 584 (1996). "We review the trial court's findings of fact

---

[1] Lewis's father had been released from prison approximately a month before the crimes; he had been in prison for most of Lewis's life.

under the clearly erroneous standard and the ultimate decision to sentence the minor as a juvenile or as an adult for an abuse of discretion." *Id.*

MCL 712A.18i(3) states:

If the court entered an order of disposition under section 18(1)(n)[2] of this chapter delaying imposition of sentence, the court shall conduct a review hearing to determine whether the juvenile has been rehabilitated and whether the juvenile presents a serious risk to public safety. If the court determines that the juvenile has not been rehabilitated or that the juvenile presents a serious risk to public safety, jurisdiction over the juvenile shall be continued or the court may impose sentence. In making this determination, the court shall consider the following:

(a) The extent and nature of the juvenile's participation in education, counseling, or work programs.

(b) The juvenile's willingness to accept responsibility for prior behavior.

(c) The juvenile's behavior in his or her current placement.

(d) The prior record and character of the juvenile and his or her physical and mental maturity.

(e) The juvenile's potential for violent conduct as demonstrated by prior behavior.

(f) The recommendations of any institution or agency charged with the juvenile's care for the juvenile's release or continued custody.

(g) Other information the prosecuting attorney or juvenile may submit.

MCL 712A.18i(7) states:

The court shall conduct a final review of the juvenile's probation not less than 3 months before the end of the probation period. If the court determines at this review that the best interests of the public would be served by imposing any other sentence provided by law for an adult offender, the court may impose the sentence. In making its determination, the court shall consider the criteria specified in subsection (3) and all of the following criteria:

(a) The effect of treatment on the juvenile's rehabilitation.

---

[2] At the time MCL 712A.18i was enacted, the pertinent provision for a delayed sentence was located at MCL 712A.18(1)(n). See 1996 PA 244. However, since then, the provisions of MCL 712A.18(1)(n) have been relocated to MCL 712A.18(1)(m). But MCL 712A.18i has not yet been amended since its enactment and therefore still refers to the outdated "section 18(1)(n)."

(b) Whether the juvenile is likely to be dangerous to the public if released.

(c) The best interests of the public welfare and the protection of public security.

MCL 712A.18i also states, in part:

> (9) If a juvenile placed on probation under an order of disposition delaying imposition of sentence is found by the court to have violated probation by being convicted of a felony or a misdemeanor punishable by imprisonment for more than 1 year, or adjudicated as responsible for an offense that if committed by an adult would be a felony or a misdemeanor punishable by imprisonment for more than 1 year, the court shall revoke probation and sentence the juvenile to imprisonment for a term that does not exceed the penalty that could have been imposed for the offense for which the juvenile was originally convicted and placed on probation.

> (10) If a juvenile placed on probation under an order of disposition delaying imposition of sentence is found by the court to have violated probation other than as provided in subsection (9), the court may impose sentence . . . .

In sentencing Lewis as an adult, the court mentioned that Lewis had hidden urine in his pants in an attempt to falsify the results of a substance-use test at MLK House. This finding by the court was not clearly erroneous, given the testimony about the incident by juvenile-justice specialist Angelo Flowers and by MLK House therapist Alexis Terry. The court also mentioned that Lewis had absconded from MLK House, and this finding, again, was amply supported by the testimony of Flowers and Terry. Finally, the court mentioned the incident involving the vehicle from Grand Ledge, and Lewis's involvement in this incident was supported by the testimony of Lansing Police Department Detective Lee McCallister. Although additional misbehavior was not explicitly delineated by the trial court, evidence supported that Lewis also had violated MLK House rules by having a cellular telephone and a Facebook account and by being in Lansing multiple times without authorization. Lewis also had appeared in photographs with what appeared to be gang signs.[3]

Victor Bozzo, another juvenile-justice specialist, thought that Lewis could be rehabilitated, but he admitted that his hope was "not as strong as it once was . . . due to the fact of the things that have transpired." Flowers testified that the only realistic option for further treatment for Lewis would be the Shawono Center in Grayling, but Lewis already had completed the treatments at Shawono before transferring to MLK House. Additionally, at the time of sentencing, Lewis would be turning 21 in approximately six months, so if sentenced as a juvenile he would only have six more months of treatment available to him.

Lewis abandoned his job, see MCL 712A.18i(3)(a), disobeyed multiple rules of MLK House, see MCL 712A.18i(3)(c), demonstrated a regression in his rehabilitation efforts, see

---

[3] Lewis's crimes in July 2010 were related to gang membership.

MCL 712A.18i(7)(a), and demonstrated a risk to public security by fleeing police in a stolen vehicle, see MCL 712A.18i(7)(c). In addition, given his multiple recent transgressions, it was unlikely that in only six months he would be rehabilitated. Lewis contends on appeal that his recent transgressions were minor and were, in part, precipitated by the illness and death of his mother, but it is important to remember that the court was sentencing Lewis not based solely on his recent actions but for his extremely serious crimes of July 2010. After these crimes, Lewis received years of intensive treatment, but he was still demonstrating flagrant violations of rules and violations of societal norms. He absconded from MLK House for approximately 10 days before being apprehended by police. Under all the circumstances, the trial court did not abuse its discretion by sentencing Lewis as an adult instead of continuing with Lewis's treatment as a juvenile.

Lewis argues that regardless of the constitutionality of MCL 769.25(9), the decision to sentence him as an adult violated his right to due process because the court did not individualize its decision by taking into account his youth. While Lewis did make a due-process argument below, this was made in the context of arguing that MCL 769.25(9) was unconstitutional—not in the context of arguing that the trial court should have sentenced Lewis as a juvenile instead of as an adult. Accordingly, because Lewis did not make his appellate due-process argument below, it is not preserved. See *People v Hanks*, 276 Mich App 91, 95; 740 NW2d 530 (2007). This Court reviews unpreserved issues for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

In support of his argument, Lewis cites *People v Adams*, 430 Mich 679, 701; 425 NW2d 437 (1988). In *Adams*, the Court stated that during sentencing, the "focus [is] on the defendant." *Id*. Lewis also cites *Miller v Alabama*, 567 US 460, 465; 132 S Ct 2455; 183 L Ed 2d 407 (2012), for the proposition that youth must be taken into account in fashioning an individualized sentence. Lewis has failed to establish a clear or obvious error with respect to his unpreserved due-process issue. The court very clearly took Lewis's youth into account and individualized his sentence by (1) affording him years of intensive treatment in juvenile-justice facilities; (2) initially disregarding his attempt to falsify the results of a substance abuse test, and by then giving Lewis more time to demonstrate progress; and (3) then, after learning of further transgressions, sentencing Lewis, for his murder conviction, to the lowest possible term under MCL 769.25(9). That statute provides that "[i]f the court decides not to sentence the individual to imprisonment for life without parole eligibility, the court shall sentence the individual to a term of imprisonment for which the maximum terms shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years."

## II. CONSTITUTIONALITY OF MCL 769.25(9)

Lewis contends that the mandatory minimum sentence of 25 years' imprisonment in MCL 769.25(9) is unconstitutional because it violates the precepts of *Miller* and related cases involving juvenile justice. We review issues of constitutional law de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

In *Miller*, two 14-year-old defendants were convicted of murder and given mandatory sentences of life imprisonment without the possibility of parole. *Miller*, 567 US at 465. The Court concluded that this mandatory sentencing

prevents those meting out punishment from considering a juvenile's "lessened culpability" and greater "capacity for change," *Graham v Florida*, 560 US 48, 68, 74, 130 S Ct 2011, 2016-2027, 2029-2030; 176 L Ed 2d 825 (2010),[4] and runs afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties. We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on "cruel and unusual punishments." [*Miller*, 567 US at 465.[5]]

The *Miller* Court added:

We . . . hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. Cf. *Graham*, 560 US at 75 ("A State is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation"). By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. Because that holding is sufficient to decide these cases, we do not consider [the] . . . alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. [*Miller*, 567 US at 479.]

In *People v Skinner*, 502 Mich 89, 114-115; 917 NW2d 292 (2018), quoting *Miller*, 567 US at 477-478, the Michigan Supreme Court set forth the various attributes of youth that the *Miller* Court found important in considering a juvenile's sentence:

(1) his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional; (3) the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him; (4) whether he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys; and (5) the possibility of rehabilitation . . . . [Quotation marks omitted; brackets added by *Skinner*.]

Lewis essentially contends that these various attributes of youth must be considered in every sentencing decision involving juveniles and that MCL 769.25(9) is unconstitutional

---

[4] The United States Supreme Court ruled in *Graham* "that life without parole violates the Eighth Amendment when imposed on juvenile nonhomicide offenders." *Miller*, 567 US at 466-467.

[5] *Miller* applies retroactively. *People v Skinner*, 502 Mich 89, 106; 917 NW2d 292 (2018).

because it does not allow for such individualized sentencing, does not provide a meaningful opportunity for release, results in cruel or unusual punishment,[6] and violates due process.

Miller, by its own terms, however, is limited to its facts—it dealt only with sentences of *life imprisonment without the possibility of parole* that are imposed *mandatorily*, without consideration of the attributes of youth. In finding a constitutional violation regarding such sentencing schemes, the *Miller* Court discussed the imposition of "the harshest sentences on juvenile offenders" and noted that a sentence of life without parole disregards the possibility for rehabilitation and change. *Miller*, 567 US at 472-473. *Graham*, too, was focused on life-without-parole sentences, *Graham*, 560 US at 69-70, 74, 82, and the *Miller* Court, after discussing *Graham*, stated, "*Graham* insists that youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole," *Miller*, 567 US at 473. The *Miller* Court stated that "the mandatory penalty schemes at issue here prevent the sentence from taking account of [characteristics of youth]" and "prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." *Id*. at 474. The Court added that this "contravenes . . . [the] principle[] that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Id*. The Court noted that a sentence of life without parole, as applied to juveniles, was akin to the death penalty. *Id*. at 474-475. It reiterated that "in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult." *Id*. at 477.

Although *Graham* and *Miller* were concerned with a categorical Eighth Amendment violation, see *Miller*, 567 US at 465; *Graham*, 560 US at 53, it is clear that *Graham* and *Miller* considered that Eighth Amendment argument in the context of *life-without-parole* sentences without consideration of the attributes of youth. But, as the prosecution correctly notes, Lewis is attempting to expand these cases beyond their holdings. Lewis also argues that MCL 769.25(9) violates the constitutional guarantees of due process. See US Const, Am XIV, and Const 1963, art 1, § 17. But Lewis's cited authority for this due-process argument is *Miller*. Lewis's attempt to reframe this issue fails because *Miller* simply is not apposite to Lewis's situation; MCL 769.25 does not implicate life-without-possibility-of-parole sentences.

In addition, this Court in *People v Wines*, 323 Mich App 343, 352; 916 NW2d 855 (2018), held that "there is no *constitutional* mandate requiring the trial court to specifically make findings as to the *Miller* factors except in the context of a decision of whether to impose a sentence of life without parole," which is inapplicable here because the prosecutor in this case did not seek a life-without-parole sentence. Thus, when imposing a sentence, other than one for

---

[6] "[T]he Eighth Amendment of the United States Constitution prohibits 'cruel and unusual punishments,' US Const, Am VIII, [and] the Michigan Constitution prohibits 'cruel or unusual punishment,' Const 1963, art 1, § 16." *People v Payne*, 304 Mich App 667, 674 n 2; 850 NW2d 601 (2014). Lewis does not make any argument on appeal that the holdings of the United States Supreme Court should be expanded in Michigan based on this difference in wording.

life without parole, the failure of MCL 769.25(9) to allow consideration of these factors cannot form the basis of a constitutional violation.[7]

---

[7] Under the Michigan Constitution, the prohibition against cruel or unusual punishment includes a prohibition on grossly disproportionate sentences. *People v Bullock*, 440 Mich 15, 32; 485 NW2d 866 (1992). To the extent that defendant makes an argument that his sentence it grossly disproportionate, such an argument is foreclosed by *Bullock*, under which we employ a three-part test that considers (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states. *Id*.

As to the first question: Defendant was convicted of first-degree felony murder, which is defined to be first-degree murder, the most serious offense there is, see MCL 750.316(b), and which, except in the case of a juvenile, would be punishable by life imprisonment without possibility of parole. "Rather than imposing fixed sentences of life without parole on all defendants convicted of [first-degree murder], MCL 769.25 now establishes a default sentencing range for individuals who commit first-degree murder before turning 18 years of age. Pursuant to the new law, absent a motion by the prosecutor seeking a sentence of life without parole, the court shall sentence the individual to a term of imprisonment for which the maximum term shall be not less than 60 years and the minimum term shall be not less than 25 years or more than 40 years." *Skinner*, 502 Mich at 102-103. Thus, under the statute, the sentence applicable to a juvenile is significantly *less* than is called for by the severity of the offense.

As to the second question: The sentence applicable in Michigan is lower than that for other serious and violent offenses, such as certain degrees of criminal sexual conduct, which are punishable by up to life imprisonment, see MCL 750.520(b)(a), and some of which provide for a mandatory minimum 25-year sentence, see MCL 750.520(b)(2)(b). Armed robbery is punishable by imprisonment for life or for any term of years, see MCL 750.529.

And finally, as to the third question, other states punish murder committed by a juvenile at least as severely as Michigan. In Ohio, for example, which does not appear to have a statute enacted in light of *Miller*, its intermediate appellate court has upheld a sentence of life with parole eligibility after 30 years. See *State v Jones*, 2015-Ohio-3506, ¶ 12 (Ohio App, 2015). As of 2014, 12 other states had passed statutes addressing sentences for juveniles convicted of murder; none provided for a sentence of less than 25 years, and minimum sentences ranged all the way up to 40 years. See The Sentencing Project, *Slow to Act: State Responses to 2012 Supreme Court Mandate on Life Without Parole*, <https://www.sentencingproject.org/publications/slow-to-act-state-responses-to-2012-supreme-court-mandate-on-life-without-parole/> (accessed May 31, 2019). Michigan is thus at the low end of the post-*Miller* legislative responses. Thus, there is no basis for a claim that MCL 769.25(9) provides for a grossly disproportionate sentence.

Affirmed.

/s/ Jonathan Tukel
/s/ Deborah A. Servitto
/s/ Michael J. Riordan